**In the Matter of Donald N. GRAMKE, Respondent,**

v.

**CASS COUNTY, Petitioner, Relator.**

**No. C1–88–1837.**

Supreme Court of Minnesota.

March 16, 1990.

Rehearing Denied April 12, 1990.

Earl E. Maus, Cass County Atty., Walker, for relator.

Leo M. McDonnell, Duluth, and Hubert H. Humphrey, III, Atty. Gen., Merwin Peterson, Asst. Atty. Gen., St. Paul, for respondent.

Minnesota State Sheriff's Ass'n., Richard D. Hodsdon, Stillwater, for amicus curiae.

Law Enforcement Labor Services, Inc., Bloomington, for amicus curiae.

WAHL, Justice.

Cass County appeals a decision of the court of appeals affirming the Commissioner of Veterans Affairs' decision that respondent Donald Gramke was not a chief deputy or a confidential employee within the meaning of the Veterans Preference Act, Minnesota Statutes §§ 197.46–481 (1988), and was entitled to a veterans preference hearing to determine the cause for his discharge. We reverse.

The question raised by this appeal is whether respondent Gramke, who served as chief deputy of Cass County from his appointment January 7, 1987, until his dismissal July 16, 1987, is entitled to a discharge hearing under the Veterans Preference Act (VPA). The VPA protects veterans from removal from public employment except for incompetency or misconduct shown after a hearing. Minn.Stat. § 197.46, however, provides that the act shall not apply to *"one chief deputy of any elected official * * * or to any person holding a strictly confidential relation to the appointing officer."* (Emphasis added).

Cass County claims that Gramke, as the chief deputy of their elected sheriff and holding a strictly confidential relation to that appointing officer, is not entitled to rights under the VPA. Gramke claimed, after his termination, that he was chief deputy in name only and never had the duties and functions of the job. He petitioned the Commissioner of Veterans Affairs (commissioner) for a veterans preference hearing. A hearing was ordered and held before an administrative law judge (ALJ) for the limited purpose of determining whether the VPA applied to Gramke's position.

The ALJ found that Gramke was not the chief deputy of an elected official within

the meaning of section 197.46 because Minn.Stat. § 387.145 (1988) did not allow for the appointment of a chief deputy sheriff in Cass County. The ALJ also concluded that Gramke did not have a strictly confidential relation to the appointing officer within the meaning of the statute. The ALJ recommended that Gramke be afforded a veterans preference hearing at which Cass County must establish cause for his discharge. He further recommended that Gramke be treated as suspended with pay until the issue of his termination was settled.

The commissioner adopted the findings and conclusions of the ALJ and ordered a discharge hearing. The court of appeals affirmed the commissioner's decision, holding that Gramke was not chief deputy of Cass County and did not have a strictly confidential relationship with his appointing officer. *Gramke v. Cass County*, 434 N.W.2d 4 (Minn.App.1989). We granted review.

Respondent Donald Gramke is an honorably discharged veteran. Originally from Ohio, Gramke moved to northern Minnesota in 1981 to manage a resort. Prior to his move to Minnesota, Gramke was employed for 14 years with the Hamilton County, Ohio, police department and before that had served as a police officer in other cities in Ohio. He had served, in the course of his career, as a patrolman, a sergeant, and a fiduciary commander. Gramke also had a background in public relations and had taken courses in Criminal Justice.

In 1986 Gramke ran for the office of Cass County sheriff. One of his opponents in the primary election was Cass County chief deputy sheriff, James Dowson, a 21-year employee of the sheriff's department, who defeated Gramke in the primary election. After his defeat, Gramke actively supported Dowson's campaign, endorsing his candidacy in the local newspaper. Dowson won the election.

One of Dowson's first duties, after his election as Sheriff of Cass County, was to appoint his chief deputy sheriff. Because there had been some divisiveness within the sheriff's department during the election, Dowson determined that it would be for the benefit of department morale if he appointed to the position of chief deputy an individual who did not have any "fixed relationships," political or otherwise, with any of the people in the department. Sheriff Dowson chose Gramke to be the chief deputy of Cass County because he had no relationship with the sheriff's department and because of his experience in law enforcement and background in law enforcement public relations.

In early January 1987, Sheriff Dowson and Gramke discussed the chief deputy position. On January 5, 1987, Gramke accepted Sheriff Dowson's offer to be chief deputy with the understanding that he was an "at will" employee to serve at the pleasure of the sheriff. On the same day, Gramke executed and filed with the county recorder an "Appointment of Deputy Sheriff" affidavit. On January 6, 1987, Sheriff Dowson submitted Gramke's name to the Cass County Board of Commissioners as his choice of chief deputy and presented Gramke to the Board as his chief deputy. The Board set the chief deputy's salary at $30,000.00 a year.

The Cass County Sheriff's department has adopted the Sheriffs' Civil Service System and is represented by a union. In 1987, the only exempt positions in the sheriff's office were the positions of sheriff and chief deputy sheriff. Gramke was appointed to the position of chief deputy without going through any of the procedures or formalities of the Sheriffs' Civil Service process. Moreover, the position of sheriff and chief deputy sheriff are the only two positions in the county sheriff system in which the employee is paid a salary as opposed to an hourly wage.

At the time Sheriff Dowson appointed Gramke as chief deputy, Gramke had informed Dowson that Gramke was eligible to be a licensed police officer in the State of Minnesota. Soon after Gramke assumed the position, however, Sheriff Dowson discovered that he had not completed all the required classroom instruction to be certified as a full-time peace officer. The ALJ found that when Sheriff Dowson discussed

the chief deputy position with Gramke, the specific duties of the position were not clearly delineated. The reason for the lack of specificity was that Sheriff Dowson retained the discretion to delegate duties to the chief deputy. From the beginning, however, both parties understood that the primary responsibility of the office was that the chief deputy was to act for the sheriff in his absence. Gramke did have responsibility for the sheriff's office while Sheriff Dowson was out of town. Gramke served as chief deputy of Cass County from January 6, 1987, through July 16, 1987, when he was summarily dismissed by Sheriff Dowson. Gramke had no prior notice of his termination and no written explanation or hearing regarding the reason for his termination.

To determine whether Gramke was a chief deputy within the meaning of Minn. Stat. § 197.46, we must first determine whether the ALJ correctly held that Minn. Stat. § 387.145 precluded the appointment of a chief deputy sheriff in Cass County. If the appointment of chief deputy sheriff was not precluded, the question then becomes whether substantial evidence supports the ALJ's finding that Gramke did not have the duties and functions of the chief deputy sheriff. We note that the burden of proving the existence of an office which is exempt from the VPA is on the appointing officer, *State ex rel. Sawyer v. Mangni*, 231 Minn. 457, 464, 43 N.W.2d 775, 779 (1950), and that agency decisions are presumed to be correct. A court reviewing an agency decision may affirm or remand, reverse or modify if "substantial rights may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are * * * [an] error of law; or * * * [u]nsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 14.69 (1988); *Crookston Cattle Co. v. Minnesota Dept. of Natural Resources*, 300 N.W.2d 769, 777 (Minn.1980).

◼ This court has never considered whether Minn.Stat. § 387.145 prohibited the appointment of a chief deputy sheriff in a county with a population less than 100,000. Section 387.145, at the time of Gramke's appointment as chief deputy sheriff, provided as follows:

> Notwithstanding the provision of any law to the contrary the sheriff of any county which has 100,000 or more inhabitants according to the 1980 federal census or the latest federal census thereafter may appoint a chief deputy or first assistant with the approval of the county board.[1]

The ALJ determined, in a thorough and thoughtful memorandum, that even though the statute did not explicitly forbid the appointment of chief deputies in counties with a population less than 100,000, the plain language of the statute permitted only one conclusion: only in those counties where the population is at least 100,000 may the sheriff appoint a chief deputy with the approval of the county board. The commissioner accepted this determination and the court of appeals agreed with the ALJ that there was no apparent reason why the legislature would need to authorize appointment of a chief deputy sheriff in counties of at least 100,000 inhabitants if counties with smaller populations could create the position of chief deputies under the general authority of the sheriff to appoint deputies.

We are not bound by this construction, nor does our reading of the statute lead us to conclude that it is compelled. Section 387.145 did not prohibit counties with a population of less than 100,000 inhabitants from having a chief deputy position within the meaning of section 197.46. The legislature could not have been unaware of the long history of the chief deputy position in Minnesota. In an affidavit presented by Cass County at the administrative hearing, the executive director of the Minnesota State Sheriff's Association advised the ALJ

---

1. Section 387.145 was amended during the 1989 Legislative Session to remove the population limitation. Section 387.145 now reads:

Notwithstanding the provision of any law to the contrary the sheriff of *any county* may appoint a chief deputy or first assistant with the approval of the county board.

Act of May 23, 1989, ch. 254, § 2, 1989 Minn. Laws 857, *codified as amended at* Minn.Stat. § 387.145 (Supp.1989).

that 51 of 57 Minnesota counties surveyed (excluding Hennepin and Ramsey) have a chief deputy position considered to be exempt from civil service and the VPA. These counties have had chief deputy positions for long periods of time, some as long as 20, 35 or 50 years. Cass County has had such a position for 24 years.

The power to create the position of chief deputy has existed implicitly under the police powers granted to the counties to enforce the law and the express powers of the county board in connection with the sheriff's office. With regard to the county sheriff, counties are expressly authorized to hold elections for the position of sheriff. Minn.Stat. § 382.01 (1988). In addition, "[t]he county board shall determine the number of permanent full time deputies and other employees and fix the compensation for each position." Minn.Stat. § 387.14 (1988). Counties also have the implied power to "do all other acts in relation to ·the * * * concerns of the county necessary to the exercise of its corporate powers." Minn.Stat. § 373.01, subd. 1(5) (1988). The implied power of a county is to do those "acts necessary to enable them to exercise their express powers." 20 C.J.S. *Counties* § 49 (1940); *see also In re Board of Commr's of Cook County*, 146 Minn. 103, 106, 177 N.W. 1013, 1014 (1920).

■ The county board's express statutory powers must be examined in light of the sheriff's statutory duty to "keep and preserve the peace of the county, for which purposes the sheriff may require the * * * power of the county as the sheriff deems

necessary." Minn.Stat. § 387.03 (1988). This is a broad grant of authority to the county sheriff. Under the common law, the sheriff had an absolute right to appoint deputy sheriffs.[2] For over 80 years, however, the county sheriff has been given the statutory power to appoint deputy sheriffs. *E.g.*, Act of April 22, 1909, ch. 361, § 2, 1909 Minn.Laws 412. As this power of appointment currently exists, "[t]he sheriff shall appoint in writing the deputies and other employees." Minn.Stat. § 387.14 (1988). Of course, the sheriff's power of appointment (and removal) is now constrained by the existence of a Sheriffs' Civil Service System, and Cass County has adopted a Sheriffs' Civil Service System. *See* Minn.Stat. §§ 387.31–45 (1988). Nevertheless, in the absence of these restraints on the sheriff's power of appointment, the sheriff retains an absolute common law right to freely appoint deputy sheriffs. That the position of chief deputy existed in this state in counties of all sizes of population, despite the lack of specific statutory authorization, is a reflection of that historic common law power of appointment.

■ As the power of appointment traditionally belonging to the sheriff has been narrowed by statutes such as the Sheriffs' Civil Service System, the county sheriff, now an elected official, needs one person outside the civil service process in whom to vest absolute trust and fidelity. Under the common law, this person was the deputy sheriff. Today this person is the chief deputy sheriff. As this court recognized in *General Drivers, Local No. 346 v. Aitkin*

**2.** The position of county sheriff has a unique historical status which can be traced back for hundreds of years. Concomitant with the common law position of county sheriff, is the right of the sheriff to appoint deputy sheriffs. Unlike other deputy positions, the right of a sheriff to appoint a deputy sheriff—in the absence of specific legislation—has been held to be an absolute right under the common law. *See, e.g., Sikes v. Boone*, 562 F.Supp. 74, 77–78 (N.D.Fla. 1983), *aff'd mem.*, 723 F.2d 918 (11th Cir.1983), *cert. denied*, 466 U.S. 959, 104 S.Ct. 2171, 80 L.Ed.2d 555 (1984); *Allen v. Fidelity & Deposit Co.*, 515 F.Supp. 1185, 1190 (D.S.C.1981), *aff'd mem.*, 694 F.2d 716 (4th Cir.1982). *See also* 70 Am.Jur.2d *Sheriffs, Police and Constables*, § 13 (1987).

That a sheriff has an absolute right under the common law to appoint deputy sheriffs must be examined in conjunction with other official positions. Ordinarily, an officer may not appoint a deputy without specific statutory authority precisely because a deputy is a person who acts in the stead of the public officer. *See, e.g., State ex. rel Stage v. Mackie*, 82 Conn. 398, 74 A. 759 (1909) (right to appoint a building inspector does not carry with it the right to create a deputy office). Thus, the absolute common law right of a sheriff to appoint deputy sheriffs is an anomaly within the scheme of local government.

*County Bd.,* 320 N.W.2d 695, 700 (Minn. 1982), a chief deputy is not entitled to the protection of the VPA. It is also clear from the language of the exception in section 197.46 that the legislature recognized the chief deputy position long before the enactment of section 387.145. The "one chief deputy of any elected official" exception was enacted in 1943, to amend the exception which then read "one deputy." Act of March 30, 1943, ch. 230, § 2, 1943 Minn.Laws 322–23. We hold that Minn. Stat. § 387.145 did not preclude the appointment of a chief deputy sheriff by counties having less than 100,000 population and that those counties, including Cass County, under the authority granted by the legislature to counties and to county sheriffs to enforce the law, had the power to appoint a chief deputy sheriff.

■ Having determined that Cass County could appoint a chief deputy sheriff, we must also decide whether respondent Gramke was the chief deputy of Cass County. The ALJ, concluding that Minn. Stat. § 387.145 precluded such an appointment, did not make any specific conclusions with respect to the question of whether Gramke was the chief deputy. The ALJ did make findings that Gramke did not exercise the duties of chief deputy.

The parties do not dispute that Gramke was hired as the chief deputy of the sheriff of Cass County. However, after Gramke's termination, Gramke requested a veteran's preference hearing on the grounds that though he had the title of chief deputy, he did not have the authority of chief deputy. Gramke argued that his actual authority was that of a deputy sheriff. Under recent interpretations of the VPA, deputy sheriffs are entitled to a veterans preference hearing. *General Drivers,* 320 N.W.2d at 700; *O'Bert v. Anderson,* 320 N.W.2d 712, 712 (Minn.1982). Gramke does not explain how he could legally be a deputy sheriff when his appointment was in violation of the civil service procedures of Cass County.

It is undisputed that the primary responsibility of the chief deputy sheriff was to act in the place of the sheriff if the sheriff was not present and, indeed, Gramke did act in the sheriff's stead when the sheriff was away. Some of Gramke's additional responsibilities as chief deputy of Cass County included: making scheduling recommendations to the sheriff, making disciplinary recommendations, assigning duties to other employees, revising the operational policy manual, conducting public service seminars, reviewing correspondence and issuing correspondence in the name of the chief deputy, signing and issuing hand gun permits (he and Sheriff Dowson were the only two individuals in the department who had this authority), meeting daily with Sheriff Dowson to discuss the previous day's happenings, and what the two considered to be their "sensitive matters."

It is Gramke's contention that he was not the chief deputy because he did not have the same authority, or exercise the same amount of supervision over the sheriff's office that Sheriff Dowson had when he was chief deputy, though there is no evidence that he questioned the amount of authority delegated to him. He also argues that because he did not perform duties similar to those described in the definition of "Supervisory Employee" in the Public Employment Labor Relations Act, Minn.Stat. § 179A.03, subd. 17 (1988), he was not the chief deputy of Cass County.

Cass County, on the other hand, argues that Gramke was chief deputy and exercised the duties and responsibilities consistent with the position of chief deputy. Cass County points out that Sheriff Dowson offered, and Gramke accepted, the position of chief deputy. The county emphasizes that Gramke admitted that he thought of himself as "second in command," and that it is undisputed that both parties understood that the chief deputy served at the pleasure of the sheriff.

The ALJ's findings illustrate some of the reasons why Gramke may not have been delegated significant authority after his appointment. First, Gramke misrepresented to Sheriff Dowson that he had his certificate to be a law enforcement officer in Minnesota, and, as the ALJ pointed out, the result of this misrepresentation was that

"the trust and confidence that Sheriff Dowson had initially placed in Gramke began to deteriorate." Also, Sheriff Dowson believed that Gramke was not familiar with the county, or its road system, and that an intimate knowledge of the county and the county roads was essential to the position of chief deputy. Additionally, the record indicates that Gramke, at times, was unwilling to perform patrol duties when asked. Finally, Gramke only worked at the sheriff's office for a little over six months.

The ALJ made findings concerning the substance of Gramke's duties and essentially concluded that the title of chief deputy did not make Gramke "chief deputy" of Cass County. However, because the ALJ did not make any specific conclusions with respect to this issue, we are free to draw our own. There is substantial evidence in the record that Gramke was the chief deputy sheriff of Cass County. This title of chief deputy was not a bare title without responsibility. Respondent Gramke was offered and accepted the position of chief deputy knowing it to be an at will position. He was hired outside the civil service process, at a salary, not an hourly wage, and he exercised many of the duties consistent with the chief deputy position. We hold, therefore, that respondent was a chief deputy within the meaning of the Veterans' Preference Act, Minnesota Statutes § 197.46 (1988), and is not entitled to a veterans preference hearing to determine the cause for his termination. We need not reach the issue as to whether Gramke was a confidential employee within the meaning of the VPA. The judgment of the court of appeals and the order of the commissioner of veterans affairs are reversed.

Reversed.