**In the Matter of the CLAIM FOR BENEFITS BY Jeffrey R. MEULENERS.**

No. A06–14.

Court of Appeals of Minnesota.

Dec. 19, 2006.

Ronald Meuser, Jr., Meuser & Associates, P.A., Eden Prairie, Minnesota, for relator Meuleners.

Michael Fahey, Carver County Attorney, Kari L.S. Myrold, Assistant County Attorney, Chaska, Minnesota, for respondent Carver County.

Mike Hatch, Attorney General, Bernard E. Johnson, Assistant Attorney General, St. Paul, Minnesota, for respondent Minnesota Public Safety Officers Benefit Eligibility Panel.

Considered and decided by WRIGHT, Presiding Judge; HALBROOKS, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

On certiorari appeal from the Public Safety Officers Benefit Eligibility Panel's determination order denying relator's application for continued employer-provided health-insurance benefits, relator argues that he is entitled to benefits because he suffered a disabling injury that forced him to retire or separate from service as a peace officer and the injury occurred while he was acting in the course and scope of his duties as a peace officer. Because the panel based its decision on factors not relevant to the statutorily required determination of whether the officer's injury occurred in the course and scope of duties as a peace officer, we reverse.

## FACTS

Relator was a Carver County deputy sheriff for approximately ten years before he suffered a disabling back injury in 2001 that forced him to separate from service as a peace officer. This disabling back injury, which occurred while the officer was serving an eviction notice, was not the first time relator had injured his back. Some of his prior back injuries occurred before relator became a peace officer, others occurred after he became a peace officer. The first injury occurred in December 1989 while relator was working as a civilian employee for Carver County. The second injury occurred in April 2000 after relator had become a peace officer, as he was getting into his squad car. The third injury, which eventually caused relator to end his career as a peace officer, occurred in December 2001 when relator slipped on icy stairs while serving an eviction notice.

In 2002, relator applied to the Public Employee Retirement Association (PERA) for a duty-related disability pension. PERA approved his application and awarded him the pension. After relator retired from his deputy-sheriff position in 2003, he began working for Carver County as a civilian employee. In this capacity, relator received, and continues to receive, employer-provided health benefits, in addition to the duty-related disability pension from PERA.

Relator also applied to the Public Safety Officers Benefit Eligibility Panel (the panel) for a determination that he was entitled to receive the continuation of health-insurance benefits under Minn.Stat. § 299A.465 (Supp.2005). After conducting a hearing, the panel agreed that relator was injured in the line of duty. Nevertheless, the panel unanimously voted to deny relator's application after determining that his occupational duties or professional responsibilities did not put him at risk for the type of injury that he sustained. The panel based its decision on findings that (1) relator's first injury occurred while he was employed as a civilian employee, not a law enforcement officer; (2) relator's subsequent injuries occurred while he was employed either as a law enforcement officer or a civilian employee; and (3) relator is receiving a duty-related disability pension from PERA and is currently employed as a civilian employee with Carver County and currently receiving health-insurance benefits from Carver County. This certiorari appeal follows.

## ISSUE

Did the Public Safety Officers Benefit Eligibility Panel err when it denied relator's application for continued employer-provided health-insurance benefits by relying on factors that are not statutorily authorized or directly relevant to whether

relator's occupational duties or professional responsibilities put him at risk for the type of injury that he sustained?

## ANALYSIS

 Judicial review presumes the correctness of an agency decision. *Gramke v. Cass County*, 453 N.W.2d 22, 25 (Minn.1990). Courts will reverse or modify an agency decision if the agency's findings and inferences are not supported by substantial evidence or its decision is arbitrary and capricious. Minn.Stat. § 14.69(e), (f) (2004); *Markwardt v. State, Water Res. Bd.*, 254 N.W.2d 371, 374 (Minn.1977). An agency's decision is not supported by substantial evidence if there is a "combination of danger signals which suggest the agency has not taken a hard look at the salient problems and the decision lacks articulated standards and reflective findings." *Cable Communications Bd. v. Nor–West Cable Communications P'ship*, 356 N.W.2d 658, 668–69 (Minn. 1984) (quotations omitted). An agency acts arbitrarily if it fails to articulate a rational connection between facts found and the decision made. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn.2001). Appellate courts retain the authority to review de novo "errors of law which arise when an agency decision is based upon the meaning of words in a statute." *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits*, 664 N.W.2d 1, 7 (Minn.2003).

Section 299A.465, subdivision 1, states that a peace officer's employer will be required to provide continued health-insurance coverage to the officer and the officer's dependents until the officer reaches the age of 65 when an officer

> (a) suffers a disabling injury that: (1) results in the officer's retirement ... or separation from service; (2) occurs while the officer ... is acting in the course and scope of duties as a peace officer ...; and (3) the officer has been approved to receive the officer's duty-related disability pension.

Minn.Stat. § 299A.465, subd. 1(a)-(c) (2004). In 2005, the legislature amended section 299A.465, by adding subdivision 6, which states that

> [w]henever a peace officer ... has been approved to receive a duty-related disability pension, the officer ... may apply to the panel [1] ... for a determination of whether or not the officer ... meets the requirements in subdivision 1, paragraph (a), clause (2). In making this decision, the panel shall determine whether or not the officer's ... occupational duties or professional responsibilities put the officer ... at risk for the type of ... injury actually sustained.

Minn.Stat. § 299A.465, subd. 6(a) (Supp. 2005).

 To determine if a statute has been properly applied, courts focus on the words of the statute to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 654.16 (2004); *First Nat'l Bank of the N. v. Auto. Fin. Corp.*, 661 N.W.2d 668, 670 (Minn.App.2003). Where the meaning of statutory language is plain and free of ambiguity, "we apply that meaning as a manifestation of legislative intent." *First Nat'l Bank*, 661 N.W.2d at

---

1. The 2005 legislation also established the Public Officer's Benefit Eligibility Panel. Minn.Stat. § 299A.465, subds. 6, 7 (Supp. 2005). The role of the panel is to determine whether the peace officer or firefighter seeking continuation of health insurance benefits suffered the disabling injury while acting in the course and scope of his or her official duties. Minn.Stat. § 299A.465, subd. 6. Subdivisions 6 and 7 of section 299A.465 expire on July 1, 2008.

670. "Administrative interpretations are not entitled to deference when they contravene plain statutory language, or where there are compelling indications that the agency's interpretation is wrong." *J.C. Penney Co. v. Comm'r of Econ. Sec.*, 353 N.W.2d 243, 246 (Minn.App.1984) (citation omitted). When statutory language is plain and unambiguous, changes or additions can only be made by the legislature. *Id.*

This court has never interpreted the relation between subdivisions 1(a) and 6 of section 299A.465. But the plain language of subdivisions 1(a) and 6 creates a two-part test for determining whether a former peace officer is entitled to continued employer-provided health-insurance benefits. First, the officer must be approved to receive a duty-related disability pension. Minn.Stat. § 299A.465, subds. 1(a), 6 (Supp.2005). If the officer satisfies this requirement, then the panel must determine whether the disabling injury occurred while the officer was acting within the course and scope of his or her duties as a peace officer. *Id.* In making this determination, the panel must decide whether the officer's occupational duties or professional responsibilities put the officer at risk for the type of injury sustained. Minn.Stat. § 299A.465, subd. 6.

Here, it is undisputed that PERA granted relator a duty-related disability pension; the first prong of the test is therefore satisfied. The more difficult determination—and the crux of this appeal—is whether the second prong was satisfied. Even though the record reflects that the injury that forced relator to retire occurred while he was acting within the course and scope of his official duties, the panel concluded that the second prong of the test was not satisfied because relator's occupational duties did not place him at risk for the type of injury he sustained.

The panel based its decision on findings that (1) relator's first injury occurred while he was employed as a civilian, not a law-enforcement officer; (2) relator's subsequent injuries occurred while he was employed either as a law-enforcement officer or a civilian employee; and (3) Carver County was providing relator health-insurance benefits in his current capacity as a civilian employee. But the plain language of the statute does not authorize consideration of these factors; therefore, these factors do not support the panel's conclusions under section 299A.465.

### 1. First injury occurred while relator employed as a civilian—preexisting condition

Section 299A.465 does not provide that a preexisting condition is a factor relevant to whether an injury occurred while an officer was acting within the course and scope of his or her duties as a peace officer. Under subdivision 6(a), the relevant inquiry is whether the officer's occupational duties or professional responsibilities put the officer at risk for the type of injury sustained. Minn.Stat. § 299A.465. But the panel articulated no rationale for why—absent statutory authorization—the facts of this case warrant treating a preexisting condition as a relevant factor for disqualification.

### 2. Relator's subsequent injuries occurred while he was employed either as a law-enforcement officer or as a civilian employee.

Relator testified that a combination of his preexisting condition and his current injury forced his retirement. But this is irrelevant to the limited inquiry the panel must make. Nowhere does the statute state that an officer's occupational duties or professional responsibilities do not put an officer at risk for a disabling injury

simply because the injury aggravates a condition that arose prior to the applicant becoming a peace officer. Moreover, we note that relator had been successfully performing the duties of a deputy sheriff for ten years prior to the December 2001 injury. Only after the December 2001 injury was relator determined to be physically unfit to continue as a peace officer.

### 3. Relator is employed as a civilian with Carver County and receiving health-insurance benefits.

The statute is silent on the issue of whether an officer, who in all other respects qualifies for continued health-insurance benefits, is disqualified merely because the officer is employed and currently receiving employer-provided health-insurance benefits. The panel may not usurp the legislature's role and decide that, as a matter of policy, a certain class of disabled officers should be disqualified from benefits that the legislature intended all officers to receive for the risks they incur while guarding the peace and safety of the citizens of this state. Such a determination is for the legislature alone.

By relying on factors that are not directly relevant to whether relator's occupational duties or professional responsibilities put him at risk for the type of injury sustained, the panel failed to determine whether relator suffered an injury while acting in the course and scope of his duties as a peace officer. Because the record clearly shows that relator's disabling injury occurred while he was acting in the course and scope of his duties as a deputy sheriff, the panel's decision was arbitrary and capricious and not supported by substantial evidence.

### DECISION

The panel's decision to deny relator's application for continued employer-provided health benefits was arbitrary and capricious and not supported by substantial evidence.

**Reversed.**