WEST MCDONALD LAKE ASSOCIATION,
Relator,

v.

MINNESOTA DEPARTMENT OF NATURAL RESOURCES,
Respondent.

A16-1469

Court of Appeals of Minnesota.

Filed June 19, 2017

William P. Hefner, Jeremy Greenhouse, The Environmental Law Group, Ltd., Mendota Heights, Minnesota (for relator).

Lori Swanson, Attorney General, Christina M.B. Herriges, Assistant Attorney General, St. Paul, Minnesota (for respondent).

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Kirk, Judge.

## OPINION

HALBROOKS, Judge

In this certiorari appeal, relator challenges the issuance of a public-waters work permit to lower the runout elevation between Hoffman Lake and West McDonald Lake, arguing that respondent (1) failed to satisfy the criteria for granting the permit, (2) granted the permit solely for private interests, and (3) violated both the Clean Water Act and state regulations by failing to obtain an NPDES permit. Because we conclude that respondent failed to satisfy certain criteria to issue a public-waters work permit and because we hold that Minnesota requires respondent to obtain an NPDES permit prior to water transfers that add pollutants to the waters of Minnesota, we reverse respondent's approval of the permit.

## FACTS

Hoffman Lake and West McDonald Lake are located in Otter Tail County. The two lakes are adjacent to each other, separated by a narrow strip of land that acts as an outlet when the water level in Hoffman Lake exceeds the runout elevation.[1] Currently, the outflow is about four feet wide. West McDonald Lake is the larger of the two lakes, with a surface area of 597 acres and a maximum depth of 62 feet. Hoffman Lake has a surface area of 157 acres and a maximum depth of 20 feet. Respondent Minnesota Department of Natural Resources (DNR) began recording water-level data on Hoffman Lake and West McDonald Lake as early as the 1970s.

Over the past several decades, the DNR has conducted multiple surveys on the runout elevation at both lakes. The runout elevation of Hoffman Lake was 1,353.3 feet in 1976 and 1,355.1 feet in 1999. In 2015, the Hoffman Lake runout elevation was around 1,354.8 feet. Accordingly, the runout elevation of Hoffman Lake is approximately 1.5 feet higher than it was in 1976. The runout elevation of West McDonald Lake was 1,353.7 feet in 1976; 1,353.4 feet in 1999; and 1,352.7 feet in 2014.

Following an evaluation of the water quality of Hoffman Lake and West McDonald Lake in 2013, a water-quality report was published. This report demonstrated that while the water quality of both lakes satisfied state water-quality standards, the water quality of West McDonald Lake was generally much higher than Hoffman Lake. The 2013 report identified the following water-quality characteristics for each lake:

|  | Hoffman Lake | West McDonald Lake |
|---|---|---|
| Total Phosphorus Mean | 27 ug/L | 11 ug/L |
| Chlorophyll *a* Mean | 8.6 ug/L | 3.5 ug/L |
| Secchi Depth Mean | 9.1 ft | 16 ft |

The total phosphorus mean measures the amount of nutrients in the lake, and chlorophyll *a* identifies algae concentration. The Secchi depth mean is a measure of a

1. The runout elevation is "the point at which a water basin begins to outflow." Minn. Dep't of Nat. Res., *Guidelines for Ordinary High Water Level (OHWL) Determinations* (1993).

lake's transparency, or "how easily light can pass through a substance." Decreasing Secchi depth readings typically equate to decreases in the recreational suitability of a lake.

Since the 1970s, the DNR has acknowledged that the outflow from Hoffman Lake to West McDonald Lake "has been a source of concern and disagreement." On October 15, 2015, the Hoffman Lake Association (HLA), which represents the residents of Hoffman Lake, petitioned the DNR to lower the runout elevation on Hoffman Lake's outflow by two feet. HLA provided no hydrologic data to support its petition.

Following the petition, the DNR obtained lake-level and runoff-elevation data on Hoffman Lake and conducted a calculation and hydrologic analysis to identify a reasonable runout elevation. Based on this calculation and analysis, the DNR informed HLA that it would seek "a permit to lower the runout elevation in response to the petition from Hoffman Lake residents." Relator West McDonald Lake Association (WMLA), which is composed of residents of West McDonald Lake, opposed the permit and any reduction of the runout elevation at Hoffman Lake's outflow.

The DNR applied to its ecological and water resources division for a permit on March 1, 2016, as the landowner of the property where Hoffman Lake's outflow is located. *See* Minn. R. 6115.0240, subps. 1-2 (2015) (stating that "the riparian owner of the land on which a project is proposed" may apply for a permit by submitting an application to the DNR's regional office "for the area where the majority of the proposed project is located"). It stated the following purpose in its permit application: "Reduce high water conditions on Hoffman Lake. Hoffman Lake residents have peti-

tioned for lower water run out elevation to reduce flooding."

In its permit application, the DNR included two aerial photographs of the area, taken in 1939 and 1963; a map identifying the outflow from each lake; runout elevation data for West McDonald Lake and Hoffman Lake; and two graphs that illustrate the change in surface elevations of both lakes since 1976. It did not reference the findings in the 2013 report in its permit application or responses to comments.

The DNR sought comments from several private organizations, as well as local, state, and federal agencies. The Minnesota Pollution Control Agency (MPCA), WMLA, and HLA provided comments on the permit application. No comments were received from the U.S. Army Corps of Engineers, Otter Tail County Land and Resource Division, DNR Wildlife Division, DNR Fisheries Division, DNR Regional Environmental Assessment Ecologist, DNR Regional Nongame Specialists, the Board of Water and Soil Resources, or the Soil and Water Conservation District. The DNR recommended approval of its permit application.

On August 18, 2016, the DNR issued itself Public Waters Work Permit 2016-0462 to "[l]ower the runout elevation of Hoffman Lake to elevation 1354.1 (NGVD 29) at the existing outlet. The outlet channel bottom shall be approximately 4 feet wide." After petitioning this court for a writ of certiorari on September 15, 2016, WMLA requested a voluntary stay of the permit, pending the conclusion of this appeal. The DNR agreed to the voluntary stay. This appeal follows.

## ISSUES

I. Is the DNR's determination that it satisfied the requirements in Minn. R. 6115.0220 (2015) unsupported by sub-

stantial evidence in the record or arbitrary and capricious?

II.  Did the DNR violate state regulations by not obtaining an NPDES permit?

## ANALYSIS

Any person aggrieved by a state agency's final decision is entitled to judicial review by this court. Minn. Stat. § 14.63 (2016). This court may

affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

. . . .

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) unsupported by substantial evidence in view of the entire record as submitted; or

(f) arbitrary or capricious.

Minn. Stat. § 14.69 (2016).

## I.

██ WMLA argues that the DNR's determination that Public Waters Work Permit 2016-0462 satisfies all criteria and prohibitions established in Minn. R. 6115.0220 is unsupported by substantial evidence in the record and is arbitrary and capricious. An agency decision is arbitrary and capricious if it

(a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

*White v. Minn. Dep't of Nat. Res.*, 567 N.W.2d 724, 730 (Minn.App. 1997) (quota-tion omitted), *review denied* (Minn. Oct. 31, 1997). Substantial evidence is evidence "that a reasonable mind might accept as adequate to support a conclusion. It must be more than a scintilla, some, or any evidence." *Minneapolis Police Dep't v. Kelly*, 776 N.W.2d 760, 765 (Minn.App. 2010) (quotation omitted), *review denied* (Minn. Mar. 30, 2010).

██ "This court presumes that agency decisions are correct and shows deference to an agency's conclusions in the area of its expertise." *AAA Striping Servs. Co. v. Minn. Dep't of Transp.*, 681 N.W.2d 706, 718 (Minn.App. 2004). And "the party challenging the agency's decision has the burden of proof" on appeal. *In re Request for Issuance of SDS Gen. Permit MNG300000*, 769 N.W.2d 312, 317 (Minn. App. 2009). We cannot substitute our judgment for that of the administrative body if the evidence properly supports its findings. *In re Denial of Eller Media Co.'s Applications for Outdoor Advert. Device Permits*, 664 N.W.2d 1, 7 (Minn. 2003).

A public-waters work permit is required to construct, repair, reconstruct, or abandon any water-level-control structure. Minn. R. 6115.0220, subp. 5; *accord* Minn. Stat. § 103G.245, subd. 1(2) (2016). A water-level-control structure is "any structure which impounds or regulates the water surface elevation or flow of public waters." Minn. R. 6115.0170, subp. 42 (2015). One goal of this rule is to "maintain or restore natural flow and natural water level conditions to the maximum feasible extent." Minn. R. 6115.0220, subp. 1. The DNR does not dispute that a public-waters work permit is required to lower the runout elevation at Hoffman Lake's outflow.

## A.

██ WMLA first contends that the DNR issued itself a public-waters work

permit solely to satisfy private interests, which is a violation of Minn. R. 6115.0220, subp. 3. "Construction or reconstruction of water level control facilities is prohibited when it is intended to manipulate water levels solely to satisfy private interests." Minn. R. 6115.0220, subp. 3.

WMLA argues that the DNR applied for a permit in response to HLA's petition, which asked the DNR to lower the runout elevation at Hoffman Lake's outflow solely to satisfy its private interests. HLA's petition states:

> We, the property owners of Hoffman Lake, petition the DNR to widen and lower the split of land between the two lakes by two feet.
>
> Over the past 20 years, we have had ongoing property damage. Our eroded shorelines now have 2 foot drop offs due to the higher water. Trees are dying and falling into the lake. Our septic systems have been compromised. Bogs have been uplifted and float where they want, causing dock and lift damage. The change in the shoreline due to erosion has been noted by the area Hydrologist. Our property is decreasing in value, because West McDonald Lake Association was allowed by the DNR to block our outlet with rock and cement. Since this land is owned by the DNR, we petition that they fully fund the project and have it completed by the spring of 2016.
>
> This project needs to be done in order to prevent more shoreline damage and to improve the health of Hoffman Lake.

It is WMLA's contention that ongoing property damage, compromised septic systems, trees dying and falling into the lake, damage to docks from uplifted bogs, and decreasing property value relate to private interests and that the DNR "attempted to spin" these private interests into issues that it could later approve in a permit application. The record does not support this contention.

After receiving HLA's petition, the DNR began its analysis and requested the opinion of one of its senior hydrologists about the runout elevation at Hoffman Lake's outflow. The DNR indicated that its permit application sought "to restore the runout elevation to an elevation consistent with the Hoffman Lake Ordinary High Water Level and to manage water quality by preventing erosion and sedimentation on Hoffman Lake." It also proposed the project to "prevent flooding and the loss of shoreline trees, and to maintain the floating cattail habitat along the shoreline for fish and wildlife benefit."

The DNR supported its permit application by addressing Hoffman Lake's water level and runout elevation—not HLA's private interests. Even if the DNR intended to lower the runout elevation at Hoffman Lake's outflow in response to the private interests expressed in HLA's petition, it also considered non-private interests in its application. Minn. R. 6115.0220, subp. 3, prohibits the DNR from granting a permit *solely* to satisfy private interests. Because the record demonstrates that the DNR based its permit application on both private and non-private interests, we conclude that the DNR did not violate Minn. R. 6115.0220, subp. 3, by granting itself the work permit.

### B.

Next, we consider whether the DNR satisfied the criteria required to grant itself a public-waters work permit. WMLA contends that it did not.

To obtain a public-waters work permit for a proposed project to a water-level-control structure, the DNR must satisfy the following criteria: (1) "the project will involve a minimum of encroachment, change, or damage to the environment,

including but not limited to fish and wild-life habitat," (2) "adverse effects on the physical or biological character of the waters are subject to feasible and practical measures to mitigate the effects," (3) "the proposed project is consistent with applicable floodplain, shoreland, and wild and scenic rivers management standards and ordinances for the waters involved," (4) "the proposed project is consistent with water and related land management plans and programs of local and regional governments, provided such plans and programs are consistent with state plans and programs," and (5) the construction or reconstruction of a water-level-control structure is for an approved purpose. Minn. R. 6115.0220, subp. 5.[2] "[T]he applicant has the burden of proving that the proposed project is reasonable, practical, and will adequately protect public safety and promote the public welfare." Minn. Stat. § 103G.315, subd. 6 (2016). Because these criteria are joined by the conjunction "and," all criteria must be met to issue a permit. We review these criteria in turn.

### 1.

▇▇▇ The first criterion requires the DNR to find that "the project will involve a minimum of encroachment, change, or damage to the environment, including but not limited to fish and wildlife habitat." Minn. R. 6115.0220, subp. 5.A. The DNR's recommendation stated that the proposed project satisfied this criterion because it "is of small dimension and disturbance; it involves the removal of rock in a small area and results in minimal change to the area. Fisheries and Wildlife staff offered no comment on the proposal." In this appeal, the DNR argues that its determination was based, in large part, on the following

ing statement from the MPCA that was received during the comment period:

A *cursory review* of water quality data for both Hoffman and West McDonald Lakes, as well as a review of the morphological characteristics for both lakes is the basis for the following comments. West McDonald currently receives water from Hoffman via the existing channel. The current water quality values for West McDonald are not expected to change as a result of the proposal. While there may be a short term increase the export of total phosphorus from Hoffman associated with the new channel and water level change, the morphometric features of West McDonald (depth and volume) should assimilate that short term loading without any decline in water. Once the level of Hoffman has been stabilized, [W]est McDonald should receive equal to or less loading of phosphorus than the present condition. Care should be taken both during and after construction of the new outlet, that temporary and permanent storm water and erosion controls be established. A non-navigable channel would help to prevent channel erosion from occurring over time.

(Emphasis added.) The DNR asserts that state agencies may rely on comments submitted by other state agencies, without conducting additional analysis. We agree that a state agency is "not required to look beyond the official comment issued by another commenting agency" and may rely on such comments in its determination. *Nat'l Audubon Soc'y v. Minn. Pollution Control Agency*, 569 N.W.2d 211, 216 (Minn.App. 1997), *review denied* (Minn.

---

**2.** Applicants seeking a permit for a proposed project that involves dam safety or water-level-control structures on watercourses must satisfy additional criteria as well. *See* Minn. R.

6115.0220, subp. 5.E., G. But because these additional criteria do not apply here, we do not address them.

Dec. 16, 1997). State agencies commonly comment on proposed projects and the actions of other agencies. *See, e.g., Iron Rangers for Responsible Ridge Action v. Iron Range Res.*, 531 N.W.2d 874, 878-79 (Minn.App. 1995), *review denied* (Minn. July 29, 1995); *Trout Unlimited, Inc. v. Minn. Dep't of Agric.*, 528 N.W.2d 903, 905-07 (Minn.App. 1995), *review denied* (Minn. Apr. 27, 1995).

But the state agency's efforts must not merely represent the agency's will. *Nat'l Audubon Soc'y*, 569 N.W.2d at 215. And a "combination of danger signals which suggest the agency has not taken a hard look at the salient problems" and a lack of articulated standards and reflective findings in an agency's decision suggest that it is not supported by substantial evidence in the record. *In re Claim for Benefits by Meuleners*, 725 N.W.2d 121, 123 (Minn. App. 2006).

WMLA first contends that the DNR cannot rely on the MPCA's comment because it was not based on a thorough analysis of how the proposed project will affect both lakes. Indeed, the MPCA characterized its own analysis as a "*cursory review* of water quality data." (Emphasis added.) WMLA also draws attention to the vague and speculative language of the MPCA's comment, which concluded that the water quality values "*are not expected to change* as a result of the proposal" because West McDonald Lake "*should* assimilate that short term [phosphorus] loading without any decline in water" and when "the level of Hoffman has been stabilized, [W]est McDonald *should* receive equal to or less loading of phosphorus than the present condition." (Emphasis added.)

WMLA further argues that the DNR and the MPCA attempted to shift the burden of reviewing the adequacy of the proposed project to the residents of both lakes. After the MPCA submitted its com-

ment, a watershed coordinator for the MPCA sent an e-mail to WMLA's president, stating: "You may wish to consider running a water quality model for West McDonald based on the Hoffman proposal. To date, I don't know if that has been accomplished—that might provide more certainty of the outcome of the proposal than currently exists." The MPCA's comment, along with the e-mail from its watershed coordinator, raise a legitimate concern that the DNR has not adequately addressed the problems associated with the proposed project. *See id.*

Next, WMLA asserts that the DNR disregarded the requirement that the project involve minimum encroachment, change, or damage to the fish and wildlife habitat. *See* Minn. R. 6115.0220, subp. 5.A. The DNR's Fish and Wildlife Division did not comment on the permit application and proposed project, even though the DNR sought its comment. The DNR now argues that it considered the DNR Fish and Wildlife Division's failure to comment as evidence that the proposed permit would not affect the fish and wildlife habitat. We are not convinced that an agency's silence constitutes a positive statement and find no authority to support that assertion.

Finally, although the DNR did not mention or rely on the 2013 report in its permit application, it now asserts that this report provides further evidence to support its determination that the project will involve a minimum of encroachment, change, or damage to the environment. The 2013 water-quality report provided an analysis of the fish habitat and water quality of Hoffman Lake and West McDonald Lake. But that report was written more than two years before the DNR submitted its permit application, and the water quality and fish habitat studies did not consider what effects the proposed project could have on these fish populations or habitats.

For these reasons, the 2013 report does not support the DNR's later determination concerning the proposed project.

We conclude that the DNR's determination that the project involves a minimum of encroachment, change, or damage to the environment is unsupported by substantial evidence in the record and is arbitrary and capricious. Although the DNR may rely on a comment from another state agency, in this instance, the MPCA's comment was based on only a cursory review. To the extent that the DNR based its decision on this cursory review, it does not provide an adequate basis for the DNR's determination. And we find no other support in the record for the DNR's determination.

### 2.

█ The second criterion requires the DNR to consider whether "adverse effects on the physical or biological character of the waters are subject to feasible and practical measures to mitigate the effects." Minn. R. 6115.0220, subp. 5.B. WMLA argues that the DNR cannot credibly claim that the proposed project will not adversely affect the character of the waters because the record contains no analysis of whether the proposed project would have *any* effect on the physical or biological character of the water. Because the DNR based its recommendation on an analysis of water quantity, not quality, we agree.

The DNR determined that mitigation is not necessary because the "proposal has no adverse effects on the physical or biological character of the waters involved" and "will not significantly impact the water quality or water levels of West McDonald Lake." It contends that information provided by the MPCA, its own engineering surveys analyzing the runout-elevation on

both lakes, and its triennial water-level measurements support this conclusion.

The MPCA's comment stated that "current water quality values for West McDonald are not expected to change as a result of the proposal." The MPCA's e-mails to the DNR, WMLA, and HLA also stated that Hoffman Lake is not impaired, degraded, or polluted but noted that it "displays poorer water quality than West McDonald Lake." As previously discussed, the MPCA's comment does not provide a sufficient basis for the DNR's determination. And the DNR's runout-elevation calculations and water-level measurements address water quantity, not quality. Therefore, we conclude that the record lacks substantial evidence to support the DNR's determination that the proposed project will not adversely affect Hoffman Lake or West McDonald Lake.

### 3.

WMLA contends that the DNR's determination that the proposed project is consistent with applicable plans, standards, and ordinances and is for an approved purpose lacks support in the record. But we need not address the remaining regulatory criteria to reach a disposition because the regulatory structure provides that the DNR must satisfy all of the criteria in order to issue a public-waters work permit, and we have concluded that the DNR has not satisfied two of them.[3] *See Navarre v. S. Washington Cty. Sch.*, 652 N.W.2d 9, 32 (Minn. 2002) ("[W]e need not decide ... issues if they are not dispositive to our decision.").

In summation, we conclude that the DNR satisfied the requirements of Minn. R. 6115.0220, subp. 3, because the work-

---

3. WMLA also argues that the DNR failed to satisfy state antidegradation standards before issuing itself a work permit. *See* Minn. R. 7050.0185 (2015). We do not address this issue because its resolution is not necessary to reach a disposition.

permit application included non-private as well as private bases. But we also conclude that the record lacks substantial evidence to support the DNR's determination that it satisfied all criteria identified in Minn. R. 6115.0220, subp. 5, for approving the public-waters work permit. Generally, the DNR may rely on a comment from another state agency. But the MPCA's comment here is, by its own characterization, based on a cursory review. Without more, the DNR's determination that the project involves a minimum of encroachment, change, or damage to the environment and that the proposed project will not adversely affect Hoffman Lake or West McDonald Lake is unsupported by substantial evidence in the record.

## II.

WMLA contends that the DNR violated state regulations and the federal Clean Water Act by issuing a public-waters work permit to lower the runout elevation on the outflow from Hoffman Lake to West McDonald Lake without first obtaining an NPDES permit. The DNR responds that the federal water-transfer rule exempts it from the requirement to obtain an NPDES permit because the water transfer from Hoffman Lake to West McDonald Lake is not subject to an intervening use. Whether the federal water-transfer rule applies in Minnesota is a matter of first impression.

Pursuant to the Clean Water Act as administered by the Environmental Protection Agency (EPA), the federal NPDES program "requires permits for the discharge of pollutants from any point source into waters of the United States." 40 C.F.R. § 122.1 (2015) (quotations omitted); accord 33 U.S.C. § 1251 (2012). The federal water-transfer rule exempts water transfers from the NPDES permit requirement. 40 C.F.R. § 122.3(i), invalidat-

ed by Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA, 8 F.Supp.3d 500 (S.D.N.Y. 2014), rev'd, 846 F.3d 492 (2d Cir. 2017). A water transfer is "an activity that conveys or connects waters of the United States without subjecting the transferred water to intervening industrial, municipal, or commercial use." Id.

A state may also administer an NPDES program if approved by the EPA. 40 C.F.R. § 123.1(c) (2015). State-administered NPDES programs may "[a]dopt[ ] or enforce[ ] requirements which are more stringent or more extensive than those required [by the EPA]." 40 C.F.R. § 123.1(i)(1) (2015). Only certain listed federal regulations apply to a state-administered NPDES program:

> These references are set forth in § 123.25 of this chapter. If a section or paragraph of part 122 or 124 of this chapter is applicable to States, through reference in § 123.25 of this chapter, that fact is signaled by the following words at the end of the section or paragraph heading: (Applicable to State programs, see § 123.25 of this chapter). If these words are absent, the section (or paragraph) applies only to EPA administered permits.

40 C.F.R. § 122.1(a)(5). The water-transfer rule is published in title 40, part 122 of the Code of Federal Regulations. But the water-transfer rule is not incorporated by reference in 40 C.F.R. § 123.25(a) (2015). Therefore, we conclude that the water-transfer rule only applies to the EPA-administered NPDES program and is not applicable in a state-administered NPDES program unless the state's NPDES program similarly exempts it.

Minnesota has an approved NPDES program. See Minn. R. 7001.1030. The MPCA administers the Minnesota NPDES program in accordance with the Clean Wa-

ter Act, and federal and state regulations. 40 C.F.R. § 123.1(f) (2015); Minn. R. 7001.1020, subp. 19 (2015). The MPCA has adopted a list of exemptions from the NPDES permit requirement, similar to the EPA. Minn. R. 7001.1030, subp. 2. Notably, the list of the MPCA exemptions includes every EPA exemption except the water-transfer rule. *Compare* Minn. R. 7001.1030, subp. 2, *with* 40 C.F.R. § 122.3 (2015). Because the exemption is not incorporated by reference in state-administered NPDES programs, which may be more stringent than EPA regulations, and because Minnesota's NPDES program does not have its own water-transfer rule, the federal water-transfer rule does not apply in Minnesota. Based on our conclusion that the federal water-transfer rule does not apply in Minnesota, we must determine whether the DNR violated state regulations by not obtaining an NPDES permit for its proposed project.

■ Pursuant to Minnesota's state-administered NPDES program, "no person may discharge a pollutant from a point source into the waters of the state without obtaining a national pollutant discharge elimination system permit." Minn. R. 7001.1030, subp. 1. No exemption applies here. *See* Minn. R. 7001.1030, subp. 2. The DNR's proposed project involves a point source, which "means a discernible, confined, and discrete conveyance," such as a ditch or channel. Minn. R. 7001.1020, subp. 23 (2015). Discharge of a pollutant is "the addition of any pollutant to surface waters of the state." Minn. R. 7001.1020, subp. 12 (2015). Pollutant is defined as "any sewage, industrial waste, or other wastes ... discharged into a disposal system or to waters of the state." Minn. Stat. § 115.01, subd. 12 (2016). "Other wastes" includes decayed wood, heat, rock, bark, sand, and biological materials. *Id.*, subd. 9 (2016).

The MPCA did not address whether the DNR's proposed project requires an NPDES permit. The DNR did not comment on whether its proposed project will discharge pollutants into West McDonald Lake. We assume, without deciding, that phosphorous, chlorophyll *a*, and other suspended solids (measured by Secchi disk transparency) satisfy the statutory definition of "other wastes" because the DNR did not argue otherwise. Because the proposed project will discharge additional pollutants from Hoffman Lake to West McDonald Lake, we conclude that lowering the runoff elevation of the outflow from Hoffman Lake to West McDonald Lake requires an NPDES permit. Therefore, the DNR's determination that an NPDES permit is not required violates state regulations.

## DECISION

The record in this matter lacks substantial evidence to support the DNR's determination that it satisfied all criteria for approving a public-waters work permit, pursuant to Minn. R. 6115.0220, subp. 5. Generally, a state agency's determinations may rest on a comment from another agency. *See Nat'l Audubon Soc'y*, 569 N.W.2d at 216. But here, the MPCA's cursory evaluation cannot be the substantial basis for the DNR's determination that its project involves a minimum of encroachment, change, or damage to the environment and will not adversely affect Hoffman Lake or West McDonald Lake. Because the proposed project will discharge additional pollutants from Hoffman Lake to West McDonald Lake and because the federal water-transfer rule does not apply in Minnesota, we conclude that the DNR violated state regulations by failing to obtain an NPDES permit. Nothing in this opinion precludes the DNR from reissuing a public-waters work permit after it conducts further assessment on the effects

that its proposed project could have on Hoffman Lake and West McDonald Lake. But on this record, we reverse the DNR's decision to grant itself Public Waters Work Permit 2016-0462.

**Reversed.**