**Danny Edward YORAWAY,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. C5–03–241.

Court of Appeals of Minnesota.

Oct. 7, 2003.

---

1. *See Wagner v. Schwegmann's South Town Liquor, Inc.,* 485 N.W.2d 730, 733 (Minn.App. 1992).

Richard L. Swanson, Chaska, for appellant.

Mike Hatch, Attorney General, Francis Green, III, Darren L. DeJong, Assistant Attorneys General, St. Paul, for respondent.

Considered and decided by WILLIS, Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant Danny Edward Yoraway challenges the district court's order sustaining the revocation of his driver's license under the implied-consent law, arguing that the arresting police officer had no authority to stop him when the alleged illegal driving occurred outside the officer's territorial jurisdiction and when the factual basis for the stop rested solely on an informant's observations.

## FACTS

The commissioner of public safety revoked appellant Danny Edward Yoraway's driver's license for driving while under the influence of alcohol. The district court sustained the revocation. Yoraway contends that the court erred because the stop that led to his arrest and conviction was illegal. The facts are undisputed.

On the evening of May 4, 2002, a private citizen, who identified himself by name, address, and telephone number, called Carver County 911 to report a motorist driving recklessly. The citizen stated that (1) he "just almost got run off the road by a red Acura Integra"; (2) the driver was 45 or 50; (3) there was a woman in the front seat; and (4) the driver was "driving like a maniac ... weavin' in and out on both sides of the road." The citizen said the Acura was traveling west on Pioneer approaching the intersection of Audubon.

The 911 operator sent a radio dispatch for a squad to assist, indicating that a caller complained that "he almost got ran off the road and it also sounds like the suspect vehicle passed 'em (inaudible) vehicles." The dispatcher described the Acura

and indicated that the driving conduct occurred in Chanhassen.

Chaska police officer Brady Juell heard the dispatcher say that the Acura was "passing in no passing zones and had forced a vehicle off the roadway." Officer Juell drove his squad east until he saw the Acura and then he turned the squad around and stopped the car. Yoraway was the driver. The stop occurred outside the Chaska city limits and was based entirely on the citizen's report as relayed by the 911 dispatcher. Officer Juell did not personally see Yoraway violate any laws before the stop.

Ultimately, a Carver County deputy sheriff arrived at the scene of the stop and arrested Yoraway for driving while under the influence of alcohol.

## ISSUES

An on-duty police officer received a dispatch to investigate a vehicle that was being driven recklessly. The vehicle and the driving conduct were described by an identified informant. Based solely on the informant's information, the officer stopped the vehicle outside his territorial jurisdiction.

1. Did the district court err in concluding that the officer was acting within the scope and course of his employment and therefore could validly stop a vehicle outside the officer's territorial jurisdiction?

2. Did the district court err when it concluded that the officer could make a valid stop when the officer personally observed no illegality but relied entirely on an identified informant's description of illegal driving conduct?

## ANALYSIS

■ Yoraway does not dispute the facts surrounding the stop of his car. Rather, he argues that the stop was improper be-cause Officer Juell did not observe any illegal driving within his territorial jurisdiction and was not in fresh pursuit and because the informant's report did not suggest alcohol-impaired driving. Thus, Yoraway raises solely a legal question as to the officer's jurisdictional authority to make the stop. "Legal questions are reviewed de novo." *Nordvick v. Comm'r of Pub. Safety,* 610 N.W.2d 659, 662 (Minn. App.2000). Furthermore, when the facts are not in dispute, we review the validity of a traffic stop as a question of law. *Berge v. Comm'r of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985).

1. *Officer's Jurisdiction*

■ Yoraway argues that an officer cannot lawfully make an investigatory stop of a motor vehicle when both the alleged illegal driving and the stop occur outside the officer's territorial jurisdiction unless the officer is in fresh pursuit of the offending driver. It is undisputed that Officer Juell was at no time in fresh pursuit of Yoraway. But fresh pursuit is only one of several bases for an out-of-jurisdiction stop. Minn.Stat. § 629.40 (2002).

■ An out-of-jurisdiction stop is permitted if the officer is acting "in the course and scope of employment." *Id.,* subd. 3. The officer then is considered to be "serving in the regular line of duty as fully as though the service was within [the officer's] jurisdiction." *Id.* The meaning of "course and scope of employment" is a question of statutory interpretation and is a legal issue that we review de novo. *State v. Meyer,* 641 N.W.2d 324, 326 (Minn.App.2002), *review denied* (Minn. May 14, 2002).

Officer Juell was on duty as a police officer and was driving a police squad car when a dispatcher relayed to him a request for assistance in investigating a citizen's complaint about Yoraway's driving.

It is beyond reasonable dispute that the employment functions and duties of police officers who are patrolling public streets include the investigation of citizen complaints and the enforcement of traffic laws. Officer Juell responded to an official dispatch requesting the investigation of a complaint that an identified vehicle was being operated recklessly. His response was quintessentially what police officers do in furtherance of their employment duties. *See id.* at 327–28 (holding that an officer acts within the course and scope of his employment when he acts in furtherance of his employer's interests).

■ Yoraway also argues that Minn. Stat. § 629.40 allows only out-of-jurisdiction arrests and does not extend to investigatory stops. This argument is supported neither by legal authority nor common sense. The caselaw has drawn no functional distinction between stops and arrests in applying this statute. *See State v. Tilleskjor*, 491 N.W.2d 893, 894 (Minn. 1992) (upholding an out-of-jurisdiction investigatory stop of a vehicle that led to the arrest of the driver). In a traffic context, more often than not an investigatory stop necessarily precedes a formal arrest. To interpret the statute to permit an arrest but not the stop necessary to effect the arrest would lead to an absurd result. *See* Minn.Stat. § 645.17(1) (2002) (it is presumed that in enacting a statute the legislature does not intend an absurd or unreasonable result).

### 2. *Factual Basis for the Stop*

■ A law enforcement officer may lawfully stop a motor vehicle if there exists a particularized, objective basis for suspecting the driver of illegal conduct. *State v. Hjelmstad*, 535 N.W.2d 663, 664 (Minn. App.1995). Although Yoraway mischaracterizes the basis for Officer Juell's stop as being a citizen's generalized and concluso-

ry report of "erratic driving," in fact the officer received from the 911 dispatcher a particularized complaint that the citizen saw Yoraway passing in no-passing zones and almost forcing his vehicle off the road. Unarguably, either type of conduct, passing in no-passing zones or nearly forcing another vehicle off the road, can give rise to a reasonable and objective suspicion of illegality that will suffice to support a lawful traffic stop. *See* Minn.Stat. § 169.13, subds. 1, 2 (2002) (reckless or careless driving).

■ Furthermore, it is not problematic that Officer Juell did not personally witness Yoraway's illegal driving, for the requisite basis of a traffic stop "may be supplied by information acquired from another person." *Marben v. Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn.1980).

■ The facts forming the basis of Officer Juell's stop were supplied by a citizen informant who personally observed Yoraway's illegal driving. A reliable informant's factually specific report of unlawful driving will alone justify a stop. *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552, 555 (Minn.1985). The reliability of an identified citizen informant is presumed. *Vivier v. Comm'r of Pub. Safety*, 406 N.W.2d 587, 589 (Minn.App.1987). The informant here identified himself fully by name, address, and telephone number, and thus was presumed reliable.

■ However, ultimate reliability depends not only on the identification of the informant but also on the nature of the information he or she gives. *See Olson*, 371 N.W.2d at 555. We consider the totality of the circumstances in determining whether a "tip" contains sufficient indicia of reliability to justify a traffic stop. *Jobe v. Comm'r of Pub. Safety*, 609 N.W.2d 919, 921 (Minn.App.2000). Here, the citizen described not only the specific suspicious

driving but also the make, model, and color of the car; the approximate age and gender of the driver and the gender of the passenger; the location of the car when the traffic infractions occurred; and the direction in which and specific streets on which the car was traveling. The law requires that there be at least a modicum of specificity as to why the informant believes the driver is driving illegally. *Olson*, 371 N.W.2d at 556. That requirement was met here.

 Yoraway contends that even though the citizen described illegal driving, he did not link that conduct to possible alcohol-impaired driving and, thus, the citizen's factual reliability was lacking. Even a minor traffic violation may suffice as the basis for an investigatory traffic stop. *State v. George*, 557 N.W.2d 575, 578 (Minn.1997). The law does not require an informant, or even a law enforcement officer, to reach and articulate an ultimate conclusion as to the reason for the illegal driving before a stop may be made. The law requires only that there be objective, factually specific conduct that reasonably raises a suspicion of illegality. *See Olmscheid v. Comm'r of Pub. Safety*, 412 N.W.2d 41, 42 (Minn.App.1987), *review denied* (Minn. Nov. 6, 1987). Furthermore, we have rejected the suggestion that the mere conclusion of an informant that a driver was "possibl[y] intoxicated" would be a sufficient factual basis for a traffic stop. *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 330 (Minn.App.2001), *review denied* (Minn. Mar. 19, 2002).

## DECISION

Because Officer Juell had authority to make a stop outside of his jurisdiction when he was acting within the course and scope of his employment and he also had reasonable, articulable suspicion to make the traffic stop based on the identified informant's tip establishing illegal activity, we affirm the district court.

**Affirmed.**