In the Matter of the CLAIM FOR BENEFITS BY Alexander Benjamin SLOAN.

No. A06–531.

Court of Appeals of Minnesota.

April 3, 2007.

Eric R. Lee, Milavetz, Gallop & Milavetz, P.A., Coon Rapids, MN, for relator.

Lori Swanson, Attorney General, Bernard E. Johnson, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge; HUDSON, Judge; and DIETZEN, Judge.

## OPINION

HUDSON, Judge.

Pursuant to a timely filed petition for writ of certiorari, relator Alexander Sloan challenges the Public Safety Officers Benefits Eligibility Panel's denial of his petition for continued employer-provided health-insurance benefits. Because we conclude that relator was discharging his occupational duty or professional responsibility when he suffered his disabling injury, we reverse.

## FACTS

Relator Alexander B. Sloan was a 21-year veteran of the University of Minnesota Police Department before he suffered a career-ending back injury. On October 8, 2001, in the wake of the 9/11 terrorist attacks, relator responded to a call about a suspicious object placed about ten feet from the main entrance to the computer-science and electrical-engineering building. Arriving at the scene, relator discovered that the suspicious object was a large console television set with its back panel loose and ajar. Relator's initial instinct was to call the Minneapolis Bomb Squad, but ultimately he chose to inspect the object himself. After determining that there was no triggering device, relator removed the panel to see whether the console contained any explosives or other dangerous objects. Convinced that the television was benign, relator decided that the television "needed to be moved immediately, because it was causing ... a lot of anxiety." In his professional judgment, "any delay in removing the TV would necessarily generate greater fear and many more nervous phone calls to the UM PD dispatch."

With other officers unable to assist, and believing himself to be in reasonably good physical shape, relator proceeded to move the console on his own. After positioning his squad car adjacent to the console, relator picked up the console and set it in the trunk of the car. However, as he lifted the console he "felt and heard a pop in his low back and experienced acute pain in his back." Relator sought immediate medical assistance and was later diagnosed with a herniated disk. Relator has not worked as a police officer since this injury.

On December 20, 2005, the Public Employees Retirement Association of Minnesota awarded relator duty-related disability pension benefits. On December 22, 2005, relator applied to the Public Safety Officers Benefit Eligibility Panel (panel) for a determination of whether he qualified to continue to receive his employer-provided health-insurance benefits pursuant to Minn.Stat. § 299A.465, subd. 1(c) (2004). On February 9, 2006, the panel convened to consider relator's application. After taking relator's testimony, the panel decided by a vote of 4–2 to deny relator's application. The panel found that relator's injury occurred while lifting a heavy object and concluded that lifting a heavy object is not an "occupational duty unique to the job." This certiorari appeal follows.

## ISSUE

Did the Public Safety Officers Eligibility Panel err by concluding that relator did

not suffer a disabling injury while discharging his occupational duties or professional responsibilities as a peace officer?

## ANALYSIS

 Appellate courts presume that an agency's decision is correct, and will "defer to an agency's expertise and its special knowledge in the field of [its] technical training, education and experience." *In re Med. License of Friedenson,* 574 N.W.2d 463, 465 (Minn.App.1998), *review denied* (Minn. Apr. 30, 1998) (quotation omitted) (alteration in original). But when reviewing legal questions, appellate courts "are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minn. Dep't of Human Servs.,* 437 N.W.2d 35, 39–40 (Minn.1989). Statutory construction is a question of law reviewed de novo. *Houston v. Int'l Data Transfer Corp.,* 645 N.W.2d 144, 149 (Minn.2002).

 Courts will overturn an agency decision if it is arbitrary and capricious. Minn.Stat. § 14.69 (2004). An agency's decision is arbitrary and capricious if it relied on factors not intended by the legislature. *White v. Minn. Dep't of Natural Res.,* 567 N.W.2d 724, 730 (Minn.App. 1997), *review denied* (Minn. Oct. 31, 1997). To ascertain and effectuate the legislature's intent, courts focus on the statute's language. Minn.Stat. § 645.16 (2004); *First Nat'l Bank of the North v. Automotive Finance Corp.,* 661 N.W.2d 668, 670 (Minn.App.2003), *review denied* (Minn. Aug. 5, 2003). "Administrative interpretations are not entitled to deference when they contravene plain statutory language, or where there are compelling indications that the agency's interpretation is wrong." *J.C. Penney Co. v. Comm'r of Econ. Sec.,* 353 N.W.2d 243, 246 (Minn.App.1984) (citations omitted). Because we conclude that

the panel relied on a factor not authorized by the statute, we reverse.

Under Minnesota law, an employer shall continue to provide health coverage to a police officer and the officer's dependents until the officer reaches the age of 65 if the officer suffers a disabling injury that: "(1) results in the officer's ... retirement or separation from service; (2) occurs while the officer ... is acting in the course and scope of duties as a peace officer ...; and (3) the officer ... has been approved to receive the officer's ... duty-related disability pension." Minn.Stat. § 299A.465, subd. 1 (2004). In 2005, the legislature added subdivision 6 to section 299A.465, which states that

> [w]henever a peace officer ... has been approved to receive a duty-related disability pension, the officer ... may apply to the panel ... for a determination of whether or not the officer ... meets the requirements in subdivision 1, paragraph (a), clause (2). In making this decision, the panel shall determine whether or not the officer's ... occupational duties or professional responsibilities put the officer ... at risk for the type of ... injury actually sustained.

Minn.Stat. § 299A.465, subd. 6(a) (Supp. 2005). This section "applies to duty-related pension approvals made on or after" July 1, 2005. 2005 Minn. Laws ch. 136, art. 8, § 7, at 1008.

 The plain meaning of section 299A.465, subdivisions 1(a) and 6, creates a two-part test for determining whether a former peace officer is entitled to benefits. First, a peace officer must establish that he or she has been approved to receive a duty-related disability pension. Minn.Stat. § 299A.465, subd. 6. The undisputed record shows that relator has satisfied this requirement.

Second, the panel must determine whether the peace officer suffered a disabling injury while acting in the course and scope of his or her duties as a peace officer. Minn.Stat. § 299A.465, subds. 1(a)(2) (2004), 6(a) (Supp.2005). This standard does not encompass any injury a peace officer incurs while on duty; instead, it is limited to only those illnesses or injuries arising from the risks associated with the peace officer's occupational duties or professional responsibilities. Minn.Stat. § 299A.465, subd. 6.

In making its determination, the panel applied a subjective and burdensome "unique-to-the-job" test, which focused on whether an officer's discrete activity was "unique" to law enforcement. The uniqueness test excludes conduct that, although mundane and ordinary, is nonetheless incidental to the proper discharge of an officer's duties and responsibilities. The plain language of the statute does not authorize such a constricted view of qualifying conduct. In order to promote fairness and consistency, and to comport with statutory language, we believe a better test is an objective one that takes into account the facts and circumstances immediately available to the officer. *State v. Othoudt,* 482 N.W.2d 218, 223 (Minn.1992). This test is circumscribed only by the limit of reasonableness under the peculiar facts and circumstances of each case. *Id.* Reasonableness means that the officer must act as a person of reasonable caution would believe is appropriate. *Id.*

Reasonableness is necessary, but it is not the only condition required. The peace officer must also be discharging an occupational duty or professional responsibility at the time of injury to qualify for benefits. The statute does not define the terms "occupational duties" or "professional responsibilities." Thus, we turn to prior caselaw for guidance. As a preliminary matter, we note that in exercising de novo review on issues of statutory construction, this court is mindful that the determination of whether a particular peace officer's conduct can be categorized as a discharge of the officer's occupational duties or professional responsibilities is a decision within the province of the panel's authority. *See* Minn.Stat. § 299A.465, subd. 6(a). Thus, the purpose here is not to produce an exhaustive list of qualified conduct, but to develop a definition of occupational duty or professional responsibility flexible enough in its application to permit the panel to do its job.

We have stated that "[i]t is beyond reasonable dispute that the employment functions and duties of police officers ... include the investigation of citizen complaints." *Yoraway v. Comm'r of Pub. Safety,* 669 N.W.2d 622, 626 (Minn.App. 2003). In addition, police officers have a duty "to investigate suspicious behavior." *State v. McKinley,* 305 Minn. 297, 302, 232 N.W.2d 906, 910 (1975) (quotation omitted). Furthermore, "the community imposes a duty on its ... law enforcement officials to provide its citizens with security in person and property." *Pletan v. Gaines,* 494 N.W.2d 38, 41 (Minn.1992). In the context of official immunity, the Minnesota Supreme Court has stated that, generally, the duties of a police officer in emergency situations require the exercise of significant independent judgment and discretion. *Elwood v. County of Rice,* 423 N.W.2d 671, 678 (Minn.1988). In fact, "[t]o encourage responsible law enforcement ... police are afforded a wide degree of discretion precisely because a more stringent standard could inhibit action." *Pletan,* 494 N.W.2d at 40 (quotation omitted). Accordingly, we hold that a peace officer's occupational duties or professional responsibilities include exercises of professional judgment that are legitimately cal-

culated to protect the health, safety, and general welfare of the public. Indicia of poor judgment does not disqualify the officer from benefits if his or her actions were reasonable under the facts and circumstances immediately available to the officer.

We believe that this test will prove to be easier to apply and will produce fairer and more consistent results than the "unique-to-the-job" analysis that the panel applied in this case. This objective test recognizes the unique nature of a peace officer's profession, but it avoids the subjective and burdensome task of determining whether an officer's discrete activity is "unique" to law enforcement. It also permits an officer to exercise professional judgment without having to worry whether his reasonable actions exceed an arbitrary boundary of uniqueness.

■■■ Having established the proper standard, we now analyze whether the facts of this case entitle relator to relief. Here, relator was responding to a call about a possible explosive device. The object proved to be benign; but because this occurred less than a month after 9/11, relator believed, in the exercise of his professional judgment, that expediency in moving the object was prudent. Relator reasonably believed that his action would protect the general welfare of the public by preventing further anxiety over a conspicuous but harmless object. In this respect, relator was performing an occupational duty or professional responsibility when he suffered a disabling back injury. However, the panel found that relator engaged in disqualifying conduct because moving a television is more properly a job for maintenance employees. But sometimes officers will be called upon to do things that, due to their duty and responsibility to the general public, they reasonably believe they are compelled to do un-

der the circumstances even though others could perform the task. The public expects this of our peace officers and we will not construe statutory language to frustrate this expectation.

## DECISION

Because relator's disabling injury resulted from a reasonable exercise of professional judgment, which was legitimately calculated to protect the health, safety, and general welfare of the public, the panel erred in denying relator's application for continued employer-provided health-insurance benefits.

**Reversed.**

DIETZEN, Judge (concurring specially).

Because I agree that relator satisfied the statutory test under Minn.Stat. § 299A.465 (2004 & Supp.2005) when he suffered his disabling injury, I would reverse the eligibility panel, but I disagree with the reasoning of the majority and, therefore, I specially concur.

This is a statutory construction case. Statutory construction is a question of law subject to de novo review. *Anderson–Johanningmeier v. Mid–Minnesota Women's Ctr., Inc.*, 637 N.W.2d 270, 273 (Minn. 2002). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). When the language of a statute is plain and unambiguous, that plain language must be followed. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). A statute is only ambiguous when its language is subject to more than one reasonable interpretation. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

Under Minn.Stat. § 299A.465, the legislature has set forth the qualifications for

the continuation of health care coverage when a police officer or firefighter suffers a disabling injury. Relator must show that his disabling injury "occur[ed] while the officer or firefighter [wa]s acting in the course and scope of duties as a peace officer," and that those duties put him "at risk for the type of injury actually sustained." Minn.Stat. § 299A.465, subds. 1(2), 6(a).

The majority adopts a new test that extends the meaning of the statute to include reasonable "exercises of professional judgment" which are legitimately calculated to protect the public. I disagree for two reasons.

First, absent a determination that the statutory language is ambiguous, it is not the province of this court to supply an additional test. "We will not supply words that the legislature either purposely omitted or inadvertently left out." *Vlahos v. R & I Const. of Bloomington, Inc.*, 676 N.W.2d 672, 681 (Minn.2004). Instead, we must apply the plain meaning of the statute. *Amaral*, 598 N.W.2d at 384.

Second, the new "test" adopted by the majority is vague, susceptible of differing interpretations, and difficult to apply. The test is vague as to what objective factors should be considered to determine whether conduct is "legitimately calculated" to protect the public. Further, such a test appears to be overinclusive, i.e., it goes beyond the language of the statute which limits coverage to the "course and scope of duties" that put the officer "at risk for the type of injury actually sustained."