In the Matter of the CLAIM FOR
BENEFITS BY Thomas John
HAGERT.

No. A06–1141.

Court of Appeals of Minnesota.

April 17, 2007.

Minnesota Public Safety Officers Benefit Eligibility Panel James R. Bettenburg, Bettenburg Law Firm, St. Paul, MN for appellant.

Lori Swanson, Attorney General, Bernard E. Johnson, Assistant Attorney General, St. Paul, MN for respondent Minnesota Public Safety Officers Benefit Eligibility Panel.

Considered and decided by STONEBURNER, Presiding Judge; WILLIS, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

This case involves a retired peace officer's eligibility to receive continued health-insurance benefits until age 65 under Minn.Stat. § 299A.465 (2004 & Supp.2005) when the retirement was caused by injuries sustained while performing his or her occupational duties. Appellant challenges the decision of the Public Safety Officers Benefit Eligibility Panel denying him continued health-insurance benefits under section 299A.465 because the injuries appellant sustained in a traffic accident while responding to a theft report did not result from an occupational duty "unique to the job of a peace officer." Appellant argues that the panel (1) erred in its interpretation of Minn.Stat. § 299A.465, and (2) unfairly denied appellant a rehearing. We affirm in part and reverse in part.

## FACTS

Appellant Thomas Hagert, a veteran of the Forest Lake Police Department, was injured on July 3, 2004, while traveling on his assigned police motorcycle to a retail store in response to a theft report. While enroute, a pickup truck traveling in oncoming traffic failed to yield and turned left in front of Hagert. To avoid a collision, Hagert lay the motorcycle on its side. As a result of doing so, he suffered injuries to his left leg, including a torn anterior cruciate ligament (ACL), a torn meniscus, and a fractured tibia. These injuries prevented Hagert from returning to work as a police officer without restrictions.

In March 2006, Hagert retired from his employment with the City of Forest Lake, and the Public Employees Retirement As-

sociation approved Hagert's application for a duty-related disability pension. Hagert also applied to the Public Safety Officers Benefit Eligibility Panel (the panel) for a determination that he was entitled to receive continued health-insurance benefits under Minn.Stat. § 299A.465 (2004 & Supp.2005).[1] On March 24, Hagert received a letter from the panel notifying him that his application would be reviewed at a hearing on April 13 and that Hagert could appear and present information to the panel at that time. Hagert did not attend the hearing. The panel voted unanimously to deny Hagert's application for continued health-insurance benefits. Hagert requested a rehearing, and the panel advised Hagert that his case would be placed on the June 8 agenda for possible reconsideration. On June 8, the panel denied Hagert's request for reconsideration. This certiorari appeal followed.

### ISSUES

I. Does Minn.Stat. § 299A.465 (2004 & Supp.2005), which authorizes a retired peace officer receiving a duty-related disability pension to receive continued health-insurance benefits if the peace officer's occupational duties or professional responsibilities put the officer at risk for the type of injury actually sustained, also require those occupational duties or professional responsibilities to be unique to those of a peace officer?

II. Did the Public Safety Officers Benefit Eligibility Panel abuse its discretion by denying appellant's request for a rehearing?

### ANALYSIS

■ We review an administrative agency's decision to determine whether the agency committed an error of law, made arbitrary and capricious findings or conclusions, or otherwise ruled in a manner unsupported by the record. Minn.Stat. § 14.69 (2006); *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.,* 624 N.W.2d 264, 277 (Minn.2001); *HealthPartners, Inc. v. Bernstein,* 655 N.W.2d 357, 360 (Minn.App.2003), *review denied* (Minn. Mar. 26, 2003). We exercise de novo review of alleged "errors of law which arise when an agency decision is based upon the meaning of words in a statute." *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits,* 664 N.W.2d 1, 7 (Minn.2003).

When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). A statute's language is ambiguous only when its language is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). We construe words and phrases according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980); *see also* Minn.Stat. § 645.08(1) (2006) (providing that words are construed according to their common usage). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *Am. Tower,* 636 N.W.2d at 312. Because Hagert challenges the panel's interpretation of Minn. Stat. § 299A.465 (2004 & Supp.2005), we

---

1. Based on the date of the panel's decision, we analyze the 2004 version of the statute, as amended in 2005.

examine the statutory language to determine how it applies in this case.

Under Minnesota law, an employer of a peace officer[2] disabled in the line of duty shall provide continued health-insurance benefits to the peace officer and the officer's dependents until the officer reaches the age of 65 when the officer suffers an injury that "(1) results in the officer's ... retirement or separation from service; (2) occurs while the officer ... is acting in the course and scope of duties as a peace officer ...; and (3) the officer ... has been approved to receive the officer's ... duty-related disability pension." Minn. Stat. § 299A.465, subd. 1(a)-(c) (2004). To obtain this benefit, once the peace officer has been approved to receive a duty-related disability pension, the officer may apply to the panel for a determination of whether the officer was injured while acting within the course and scope of his or her duties. Minn.Stat. § 299A.465, subd. 6(a) (Supp.2005). The panel then determines, based on the facts, "whether or not the officer's ... occupational duties or professional responsibilities put the officer ... at risk for the type of ... injury actually sustained." *Id.*

The plain language of section 299A.465 creates a two-part test for determining whether a retired peace officer is entitled to receive continued health-insurance benefits: (1) the officer must be approved to receive a duty-related disability pension; and (2) the officer's occupational duties or professional responsibilities must have put the officer at risk for the type of injury

actually sustained. *Id.,* subds. 1(a), 6(a); *In re Claim for Benefits by Meuleners,* 725 N.W.2d 121, 124 (Minn.App.2006). These inquiries are not coextensive. A duty-related disability pension is awarded to a peace officer injured during "any act of duty." Minn.Stat. § 353.656, subd. 1 (Supp.2005); *see In re Application for PERA Police & Fire Plan Line of Duty Disability Benefits of Brittain,* 724 N.W.2d 512, 519 (Minn.2006) (holding that "any act of duty" includes all tasks and functions of an officer, not just those involving hazards or heightened risks). But continued health-insurance benefits are limited to those retired peace officers who sustain an injury or illness for which the officer's occupational duties or professional responsibilities put the officer at risk. Minn.Stat. § 299A.465, subd. 6(a). The legislature created the panel solely to determine whether an officer satisfies the second part of the test for eligibility, namely, whether the officer's occupational duties or professional responsibilities put the officer at risk for the injury or illness sustained.[3] *See* Minn.Stat. § 299A.465, subd. 7 (Supp.2005) (establishing course and scope of panel's duties).

Although Hagert was on duty and responding to a theft call using a police motorcycle, the panel concluded that Hagert's "injury was not an occupational duty unique to the job of a peace officer" and that "injuries from a motor vehicle accident [are] not the intended use of benefits under Minn.Stat. § 299A.465, subd. 6." During the panel's deliberations, members

---

**2.** A "peace officer" is defined as "an employee or an elected or appointed official of a political subdivision or law enforcement agency who is licensed by the board, charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state and who has the full power of arrest." Minn.Stat. § 626.84, subd. 1(c)(1) (2006).

**3.** The Public Officers Benefit Eligibility Panel was established with 2005 legislation. Minn. Stat. § 299A.465, subds. 6, 7 (Supp.2005) (noting that subdivisions 6 and 7 expire on July 1, 2008).

considered that Hagert was not responding in an emergency mode at the time of the accident.

■ Hagert, who was approved to receive a duty-related disability pension, argues that the panel applied a standard different from that authorized by Minn. Stat. § 299A.465, subd. 6(a), by considering whether Hagert's injuries resulted from occupational duties or professional responsibilities that were "unique to the job of a peace officer." We agree. The statute's language is unambiguous. There is no statutory requirement that the officer's occupational duties or professional responsibilities be "unique to the job of a peace officer." Rather, the statute requires that the officer's occupational duties or professional responsibilities put the officer at risk for the type of injury sustained. *Id.* The additional requirement applied by the panel does not effectuate the plain language of section 299A.465.

■ It was Hagert's occupational duty to respond on his assigned police motorcycle to a retail store to investigate a theft. Because a turning vehicle did not see Hagert's motorcycle, Hagert was forced to use an avoidance tactic with his motorcycle to prevent a collision. In doing so, he injured his left leg but sustained far less-serious injuries than if the collision had not been successfully avoided. Hagert's occupational duty—responding to a police call on his assigned police motorcycle—put him at risk for the leg injury he sustained in the accident. Unlike a negligence standard, under the statutory standard at issue here, Hagert's occupational duties need not be the proximate cause of his injury. Rather, the applicable legal standard requires that his duties "put [him] at risk for the type of ... injury actually sustained." Minn.Stat. § 299.465, subd. 6(a). Although the proximate cause of Hagert's injuries was the other driver's failure to see the motorcycle and yield, Hagert's duty to travel on a motorcycle put him at risk for the injuries he sustained. The panel erred by denying Hagert continued health-insurance benefits because such a duty was not "unique to the job of a peace officer." *See In re Claim for Benefits by Sloan,* 729 N.W.2d 626, 630, 2007 WL 968756 at *3 (Minn.App. Apr.3, 2007) (noting that panel's unique-to-the-job analysis improperly excluded conduct that, although mundane and ordinary, is incidental to proper discharge of officer's duties).

## II.

■ Hagert also maintains that the panel abused its discretion and denied him due process of law when it denied his request for a rehearing. Section 299A.465 does not afford Hagert a rehearing as a matter of right. But administrative agencies have the inherent or implied power to correct erroneous decisions. *Nieszner v. State, Dep't of Jobs & Training,* 499 N.W.2d 832, 838 (Minn.App.1993). We accord deference to an administrative agency's decision to deny a request for rehearing and will reverse that decision only for an abuse of discretion. *See Goodwin v. BPS Guard Servs., Inc.,* 524 N.W.2d 28, 30 (Minn.App.1994) (deferring to commissioner's discretion not to remand for new hearing when party failed to submit testimony at first hearing).

■ The United States Constitution guarantees the right to due process of law. U.S. Const. amends. V, XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quotation omitted). When considering a procedural-due-process challenge, we apply a balancing test to determine whether the process adequately balances the private

interest at stake, the risk that the process utilized will result in an erroneous deprivation of the private interest, the probable value of additional procedural safeguards, and the state's interest in the procedures provided, including the administrative burden and expense additional procedures would require. *In re Conservatorship of Foster*, 547 N.W.2d 81, 85 (Minn.1996).

In March 2006, Hagert received the panel's letter notifying him of the date that his application would be considered and of the right to present information to the panel. Although Hagert received ample notice and an opportunity to be heard, neither Hagert nor his counsel attended the hearing. And Hagert did not request a different date prior to the hearing or notify the panel that he was unable to attend on the date scheduled. Our review of the record establishes that Hagert's submission gave the panel sufficient factual information to render a decision. Hagert cites no additional facts that he would have submitted for rehearing. Because Hagert was given adequate notice and opportunity to be heard at the first hearing, he was not denied due process, and the panel's decision to deny his request for rehearing was not an abuse of discretion.

## DECISION

We affirm the Public Safety Officers Benefit Eligibility Panel's decision to deny Hagert's request for rehearing. But because the panel did not apply the correct legal standard when it denied continued health-insurance benefits under Minn.Stat. § 299A.465 (Supp.2005), we reverse.

**Affirmed in part and reversed in part.**