In the Matter of the Claim
for Benefits by Scott
SLETTEN.

No. A06–2263.

Court of Appeals of Minnesota.

Dec. 24, 2007.

[black box]

William J. Krueger, William J. Krueger, P.A., New Brighton, MN, for relator Scott Sletten.

Lori Swanson, Attorney General, Bernard E. Johnson, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Public Safety Officers Benefit Eligibility Panel.

Considered and decided by RANDALL, Presiding Judge; KALITOWSKI, Judge; and HUDSON, Judge.

## OPINION

RANDALL, Judge.

On certiorari appeal from a determination of the Minnesota Public Safety Officer Eligibility Panel (MPSOEP) denying his claim for continuing payment of employer's contribution to health insurance coverage under Minn.Stat. § 299A.465, subd. 1 (2006), relator argues that MPSOEP erred in denying his claim for benefits. Relator argues that regardless of whether the focus is on a 2002 injury involving moving a chair, or a 2004 injury involving a cave rescue, he is entitled to benefits because both injuries occurred while he was acting within the scope of his duties as a firefighter. The injury that ultimately forced relator to retire occurred during a 2004 cave rescue. The cave rescue was an occupational duty or professional responsibility that put relator at risk for the type of injury he sustained. We reverse.

## FACTS

Relator Scott Sletten was employed as a firefighter for the City of St. Paul from May 11, 1992, until August 11, 2006. On February 18, 2002, while working at Fire Station 1, relator injured his left shoulder and ruptured a disc in his neck. The injury occurred when relator "picked up a chair to carry it into the kitchen [at the fire station]," and he received workers' compensation benefits as a result of the injury.

In September 2002, relator returned to work after being on leave from the injury. Relator reinjured himself on April 27, 2004, while performing a cave rescue. Relator reported the injury two days later; he did not receive any immediate medical treatment for the injury, nor did he initially miss any time from work. It was not until July 2004, after his left shoulder and arm pain worsened, that relator requested a referral to Physicians Neck and Back Clinic for treatment of the injury.

In October 2004, relator began receiving workers' compensation benefits as a result of the re-aggravation of his shoulder injury. Sometime thereafter, relator determined that he was unable to resume his duties as a firefighter due to his injury. In August 2006, relator was awarded a Public Employees Retirement Association (PERA) duty-related disability pension. Shortly thereafter, when the City of St. Paul was informed that relator was awarded PERA disability benefits, it terminated relator's temporary total disability workers' compensation benefits. A month later, relator filed his eligibility application form with respondent Minnesota Public Safety Officers Benefit Eligibility Panel (MPSOEP) requesting continuing health care benefits under Minn.Stat. § 299A.465, subd. 1 (2006).

MPSOEP met to consider relator's claims on October 12, 2006. By a five-to-one vote, MPSOEP denied appellant's claim for benefits. MPSOEP issued an order denying relator's claim because "the evidence is inconclusive that [relator's] occupational duties or professional responsibilities put him at risk for the type of

illness or injury actually sustained." This certiorari appeal followed.

## ISSUE

Did MPSOEP err in concluding that the evidence did not conclusively establish that relator's occupational duties or professional responsibilities put him at risk for the type of injuries he sustained?

## ANALYSIS

 Appellate courts presume that an agency's decision is correct, and will "defer to an agency's expertise and its special knowledge in the field of [its] technical training, education and experience." *In re Med. License of Friedenson*, 574 N.W.2d 463, 465 (Minn.App.1998), (alteration in original) (quotation omitted) *review denied* (Minn. Apr. 30, 1998). But when reviewing legal questions, appellate courts "are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). Statutory construction is a question of law reviewed de novo. *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn.2002).

Under Minnesota law, an employer shall continue to provide health coverage to a firefighter and the firefighter's dependents until the firefighter reaches the age of 65 if the "firefighter suffers a disabling injury that: (1) results in the ... firefighter's retirement or separation from service; (2) occurs while the ... firefighter is acting in the course and scope of duties as a ... firefighter; and (3) the ... firefighter has been approved to receive the ... firefight-

er's duty-related disability pension." Minn.Stat. § 299A.465, subd. 1 (2006). In 2005, the legislature added subdivision 6 to section 299A.465, which states:

> Whenever a ... firefighter has been approved to receive a duty-related disability pension, the ... firefighter may apply to the [MPSOEP][1] for a determination of whether or not the ... firefighter meets the requirements in subdivision 1, paragraph (a), clause (2). In making this decision, the [MPSOEP] shall determine whether or not the ... firefighter's occupational duties or professional responsibilities put the ... firefighter at risk for the type of illness or injury actually sustained.

Minn.Stat. § 299A.465, subd. 6(a) (2006).[2] This section "applies to duty-related pension approvals made on or after" July 1, 2005. 2005 Minn. Laws ch. 136, art. 8, § 7, at 1008.

The plain meaning of section 299A.465, subdivisions 1(a) and 6, creates a two-part test for determining whether a former firefighter is entitled to benefits. First, a firefighter must establish that he has been approved to receive a duty-related disability pension. *Id.*, subd. 6. The undisputed record shows that relator has satisfied this requirement.

 Second, the panel must determine whether the firefighter suffered a disabling injury while acting in the course and scope of his duties as a firefighter. *Id.*, subds. 1(a)(2), 6(a). "This standard does not encompass any injury a [firefighter] incurs while on duty; instead, it is limited

1. The MPSOEP is composed of the following seven members: two members recommended by the Minnesota League of Cities; one member recommended by the Association of Minnesota Counties; two members recommended by the Minnesota Police and Peace Officers Association; one member recommended by the Minnesota Professional Firefighters Association; and one nonorganizational member recommended by the six organizational members. Minn.Stat. § 299A.465, subd. 7(a) (2006).

2. Section 299A.465, subd. 6, expires July 1, 2008. Minn.Stat. § 299A.465, subd. 6(b) (2006).

to only those illnesses or injuries arising from the risks associated with the [firefighter's] occupational duties or professional responsibilities." *In re Claim for Benefits by Sloan,* 729 N.W.2d 626, 630 (Minn. App.2007) (citing Minn.Stat. § 299A.465, subd. 6).

In denying relator's claim, MPSOEP concluded that the "evidence is inconclusive that his occupational duties or professional responsibilities put him at risk for the type of illness or injury actually sustained." MPSOEP failed to make any findings explaining its decision. MPSOEP appears to conclude that it was the 2002 injury involving the chair, rather than the 2004 cave rescue, that ultimately forced relator to retire. Thus, it appears the panel denied relator's claim feeling the injury involving the chair did not occur while relator was acting within the course and scope of his duties as a firefighter.

Relator argues that MPSOEP's decision is erroneous because both the 2002 injury involving the chair, and the 2004 cave rescue injury, occurred while he was acting within the scope of his duties as a firefighter. To support his claim, relator asserts that it was part of his responsibility as a firefighter to clean the fire station, and that a refusal to accept this responsibility would lead to discipline, if not termination of his employment. Relator argues that because he was injured when moving a chair to wash the kitchen floor, his injury occurred while he was acting within the course and scope of his duties as a firefighter. Relator further argues the 2004 injury occurring during the cave rescue also falls within the statutory language because he was acting within the scope and duties as a firefighter by crawling around in a cave performing rescue operations. Relator contends that regardless of whether we focus on the 2002 injury involving the chair, or the 2004 cave rescue, he is entitled to benefits.

### A. 2002 chair injury

Relator correctly asserts that his duties as a firefighter include "maintenance and care of quarters, equipment, tools, apparatus, and grounds." Relator claims that he was performing such a duty in 2002 when his injury occurred. We acknowledge that despite the seemingly harmless action of "moving a chair," it was a bona fide injury, with bona fide medical bills, and a bona fide layoff. The injury was recognizable as compensable with worker's compensation benefits. The issue is whether this compensable injury is the kind to also allow relator (over and above worker's compensation and over and above temporary/total partial/full disability) the other perk of medical insurance coverage for life.

This issue has been analyzed by our court several times. In *In re Claim for Benefits by Hagert,* a police officer was forced to retire after he sustained injuries when he crashed his motorcycle responding to a theft report. 730 N.W.2d 546, 547 (Minn.App.2007). This court held that the decision to deny him insurance benefits was erroneous because the officer's "duty to travel on a motorcycle put him at risk for the injuries he sustained." *Id.* at 550.

Similarly, in *In re Claim for Benefits by Meuleners,* a peace officer was forced to retire after he was injured when he slipped on icy stairs while serving an eviction notice. 725 N.W.2d 121, 122 (Minn.App. 2006). This court concluded that the peace officer was entitled to benefits because the fall "occurred while he was acting in the course and scope of his duties as a deputy sheriff." *Id.* at 125.

Finally, in *Sloan,* a peace officer responded to a call about a suspicious object placed about ten feet from the main entrance to a building on the University of Minnesota campus. *Sloan,* 729 N.W.2d at 628. When he arrived at the scene, the peace officer discovered that the object

was a large console television. *Id.* Because the call occurred in the wake of the 9/11 terrorist attacks, the peace officer was concerned about the possibility that the console might contain a bomb. *Id.* After determining that the object was benign, the officer, using his professional judgment, decided to remove the console and place it in the trunk of his squad car because the object was "causing . . . a lot of anxiety." *Id.* While moving the console, the peace officer sustained an injury that forced him to retire. *Id.* In determining whether the officer was entitled to health insurance benefits, this court held that:

> a peace officer's occupational duties or professional responsibilities include exercises of professional judgment that are legitimately calculated to protect the health, safety, and general welfare of the public. Indicia of poor judgment does not disqualify the officer from benefits if his or her actions were reasonable under the facts and circumstances immediately available to the officer.

*Id.* at 630–31 (establishing an objective test to determine whether a claimant has satisfied the statutory requirements of Minn.Stat. § 299A.465). The court held that the peace officer was entitled to benefits because the officer's "injury resulted from a reasonable exercise of professional judgment, which was legitimately calculated to protect the health, safety, and general welfare of the public." *Id.* at 631.

■ These cases articulate that there is no narrow limiting requirement that the injury be indigenous to fighting fires or police work. *See id.,* at 630 (rejecting a unique-to-the-job analysis when considering claims under section 299A.465, subd. 6, because such a test excluded conduct that, although mundane and ordinary, is incidental to proper discharge of an officer's duties). In other words, an applicant for benefits under section 299A.465, does not have to sustain an injury while "fighting

fires" or "shooting at the bad guys" to be eligible for benefits under the Minn.Stat. § 299A.465.

The addendum to the statute has to mean something. This is precisely the question here. Anybody can end up moving a piece of office furniture around, assuming it was something they should be doing as part of the work day. Any secretary—judicial or non-judicial, legal or non—legal any housewife, gardener, plumber, doctor, lawyer, judge, cleaning his or her office; any of those groups could move a chair or a table, suffer an arm, leg, or back injury, and pull worker's compensation. On the other hand, if the injury is received during work hours and on a task either *explicitly or implicitly* assigned to you and if you put a claim for worker's compensation benefits and it is honored, relator argues why should the inquiry go any further? However, we do not need to answer the precise question of "the chair." Relator sustained a later injury; an injury that forced him to retire, that is not in dispute under the statute.

### B. 2004 cave rescue injury

■ Respondent argues the 2004 cave rescue falls within the ambit of the statutory language. Respondent argues that because relator did not immediately seek medical treatment, the focus should not be on this injury.

This is not the test. We acknowledge that the record and transcript is short. But relator's expert found bona fide injury and disability following the cave rescue. MPSOEP's own independent medical consultant *agreed* that relator is presently disabled and that relator's "disability appears to be related to a specific event occurring in the line of duty." There is *nothing* in the record to support a disregard of these medical examinations. The record reflects that the cave rescue injury

was the injury that forced relator to retire. Cave rescue is an occupational duty or professional responsibility of firefighters. MPSOEP erred in denying relator's claim for benefits.

## DECISION

The injury that forced relator to retire occurred while relator was performing the cave rescue in 2004. The cave rescue was an occupational duty · or professional responsibility that put him at risk for the type of injury he sustained. Relator is entitled to continuing health coverage benefits.

**Reversed.**