*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0398**

In the Matter of the Duty Disability Benefits for Matthew Olson.

**Filed October 27, 2014
Affirmed
Stoneburner, Judge***

Public Employees Retirement Association of Minnesota

Mary Beth Boyce, Ronald F. Meuser, Jr., Jennifer Yackley, Meuser Law Office, P.A., Eden Prairie, Minnesota (for relator)

Lori Swanson, Attorney General, Rory H. Foley, Assistant Attorney General, St. Paul, Minnesota (for respondent)

        Considered and decided by Kirk, Presiding Judge; Hudson, Judge; and Stoneburner, Judge.

## UNPUBLISHED OPINION

**STONEBURNER**, Judge

        Relator, a public employee who incurred a work-related disabling injury, challenges the denial of his application for duty disability benefits. Relator argues that respondent, administrator of his disability benefits, misinterpreted the statute defining duty disability benefits, acted arbitrarily and capriciously and outside the scope of its

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

authority, and reached a conclusion unsupported by the evidence when it concluded that relator failed to meet the statutory requirements for entitlement to duty disability benefits. We affirm.

## FACTS

The essential facts are undisputed in this case. In February 2011, relator Matthew Olson, a sheriff's detention deputy for Hennepin County, suffered a disabling injury to his left knee. The injury occurred on a steep, narrow, poorly lit spiral staircase between the secure fourth- and fifth-floor control rooms of the Hennepin County Detention Center. Olson was descending to the fourth-floor control room to relieve another officer who had expressed an urgent need to use the restroom. At least one detention deputy is required to be in each control room at all times to monitor the prisoner-housing areas.

Olson applied for both regular disability benefits and duty disability benefits. Respondent Board of Trustees of the Public Employees Retirement Association of Minnesota (PERA board) approved Olson's application for regular benefits but denied his application for duty disability benefits. Olson requested a hearing, which was held before an administrative law judge (ALJ).

Based on the undisputed facts, the ALJ concluded that Olson failed to meet his burden to prove by a preponderance of evidence that he met the statutory requirements for entitlement to duty disability benefits. The ALJ recommended that the PERA board affirm denial of Olson's application for duty disability benefits.

Olson appealed the ALJ's decision, and the matter was submitted to the PERA board on the record made at the administrative hearing. The PERA board discussed the

2

matter at a regular board meeting and adopted the ALJ's findings, recommendations, and decision in their entirety. This certiorari appeal followed.

## D E C I S I O N

### I.    Standard and scope of review

Judicial review of an agency decision begins with the presumption that the agency's decision is correct. *In re Claim for Benefits by Meuleners*, 725 N.W.2d 121, 123 (Minn. App. 2006). But an agency decision may be remanded for further proceedings, modified, or reversed on appeal

> if the substantial rights of the [relator] may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
> . . . .
> (b) in excess of the statutory authority . . . of the agency; or
> . . . .
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
> (f) arbitrary or capricious.

Minn. Stat. § 14.69 (2012). And an appellate court "retain[s] the authority to review de novo errors of law which arise when an agency decision is based upon the meaning of words in a statute." *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 721 (Minn. 2008) (quotation omitted). An agency's interpretation of a statute that it administers is entitled to deference and should be upheld unless it is in conflict with the express purpose of the statute and the legislature's intention. *George A. Hormel & Co. v. Asper*, 428 N.W.2d 47, 50 (Minn. 1988); *contra J.C. Penney Co. v. Comm'r of Econ. Sec.*, 353 N.W.2d 243, 246 (Minn. App. 1984) (stating that an agency's interpretation of a statute is not entitled to deference if it is in contravention of the plain statutory language

3

or when there are compelling indications that the agency's interpretation is wrong). We consider the words of a statute in order to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012).

## II. Language of Minn. Stat. § 353E.06 (2012) as applied

### A. The statute

Minn. Stat. § 353E.06 provides for "regular"[1] and "duty" disability benefits for local government correctional service employees like Olson. Duty disability benefits are paid at a higher rate than regular disability benefits. *See* Minn. Stat. § 353E.06, subd. 1. At the time of Olson's injury, a "duty disability" was defined, in relevant part, as:

> a condition . . . that is the direct result of an injury incurred during . . . the performance of normal duties or the actual performance of less frequent duties, either of which are specific to protecting the property and personal safety of others and that present inherent dangers that are specific to the positions covered by the local government correctional service retirement plan.

Minn. Stat. § 353E.001, subd. 1 (2012).[2]

---

[1] A "regular disability" is defined, in relevant part, as "a condition . . . that results from . . . an injury that arises from any activities . . . while at work from performing those normal or less frequent duties that do not present inherent dangers that are specific to the occupations covered by the local government correctional service retirement plan." Minn. Stat. § 353E.001, subd. 4 (2012).

[2] The definition of "duty disability" was amended in 2013 to provide, in relevant part, that a "duty disability" is a condition "that is the direct result of an injury incurred during . . . the performance of inherently dangerous duties that are specific to the positions covered by the local government correctional service retirement plan." Minn. Stat. § 353E.001 (Supp. 2013).

4

**B.      Olson's claims**

**1.      Interpretation of statute**

Olson argues that the PERA board misinterpreted the duty disability statute by concluding that descending the spiral staircase does not present inherent dangers specific to his position.  Olson asserts that:  (1) the nature of his position puts him in constant danger of suffering bodily harm, and he was acting in furtherance of his position when he was injured; (2) while not every stairwell presents inherent dangers within the meaning of the statute, "this spiral staircase by its design and construction did present inherent dangers"; (3) the PERA board impermissibly equated "inherent dangers" with "inherently dangerous" and thereby required him to prove that a duty was "inherently dangerous" rather than that a duty presented an "inherent danger"; and (4) because he was descending the staircase while performing work duties and because an inherent danger of descending the stairs is falling, he met his burden of proof.

The record reflects that the terms "inherently dangerous" and "inherent danger" were sometimes used as synonyms by Olson's attorney and by members of the PERA board.  Olson has attempted to distinguish these terms, but has described the stairs as both presenting an inherent danger and as being inherently dangerous.  The findings of fact and conclusions of law adopted by the PERA board accurately recite the language of the statute in effect at the time of Olson's injury, and we find no merit in Olson's argument that any use of the terms "inherent danger" and "inherently dangerous" in the PERA board's discussion reflect a misinterpretation of the statute or misapplication of the statute to the facts of Olson's injury.

5

Olson also argues that the PERA board misinterpreted the statute by concluding that to be "specific" to the position of a correctional officer an inherent danger must be "unique" to the job.[3] Olson relies on *In re Claim for Benefits by Sloan*, 729 N.W.2d 626, 630 (Minn. App. 2007). In *Sloan*, we interpreted a statute that applied to injuries incurred during the course and scope of a peace officer's duties as a peace officer. In that case, we rejected as too narrow a subjective test focused on whether the discrete activity involved is "unique" to law enforcement. *Id.* We concluded that interpretation of the statute requires an objective test that "takes into account the facts and circumstances immediately available to the officer" in taking action as a peace officer. *Id.* The statutory language at issue in *Sloan* permits broader coverage than the language of Minn. Stat. § 353E.001, subd. 1. But even under the *Sloan* analysis that takes into account the facts and circumstances "immediately available" to Olson in moving between control rooms, we conclude that the PERA board did not misinterpret Minn. Stat. § 353E.001, subd. 1, by concluding that Olson's injury did not occur while he was performing a duty specific or unique to his position.

Although the statute does not provide a bright-line test for determining whether a disability qualifies for duty disability benefits, we agree with the PERA board's determination that under the plain language defining duty disability the circumstances of

---

[3] Olson appears to argue that "specific" can be interpreted to mean either "unique" or "common," creating an ambiguity in the statute. But "specific" is defined, in relevant part, as "[s]pecial, distinctive, or unique." *The American Heritage Dictionary of the English Language* 1669 (4th ed. 2000). The typical definition of "common" is "[w]idespread; prevalent," or "usual." *Id.* at 372. Because "specific" and "common" have nearly opposite meanings, we find no merit in Olson's argument.

6

Olson's injury do not establish his eligibility for duty disability benefits. Although Olson was disabled by an injury that occurred while he was performing a normal duty, the duty to move from one secured area to another using a stairway does not present an inherent danger specific to Olson's position as a corrections officer.

Moving from one non-dangerous area in a workplace to another non-dangerous area, even when a stairway is used, is a requirement associated with many occupations and is not specific to the position Olson occupied at the time of his injury. To reach this conclusion, one need not parse the meanings of "specific" and "unique." *See Axelberg v. Comm'r of Pub. Safety*, 848 N.W.2d 206, 214 (Minn. 2014) ("[When] the words of [a] law are sufficiently explicit to ascertain and effectuate the intent of the Legislature, and their application to [a] situation is clear and free from all ambiguity, there is no need to turn to the canons of construction.").[4]

Olson further asserts that the statutory definition of duty disability is ambiguous and should be interpreted consistent with legislative intent, which, Olson asserts, is that special consideration should be given to government employees who devote their time to protecting the safety of others. We agree that many aspects of correctional-officer work present inherent dangers and that the legislature intended special consideration for injuries incurred in performing such duties that are specific to the position. But Olson's

---

[4] Olson alternatively argues that even if this court accepts the board's "unreasonable and narrow definition of 'specific,' the inherent danger [posed] by the spiral staircase would still satisfy [the statute] because it is unique to the duties of a Hennepin County correctional officer." But the statute plainly provides that it is the duty being performed that must be specific to the position, not that the mechanism of injury is specific (or unique) to the job location.

7

reading of the statute would result in an award of duty disability benefits for any injury incurred on the job, which is plainly not what the legislature intended at the time of Olson's injury.[5]

### 2.    PERA board's scope of authority

Olson next argues that the PERA board's repeated use of the phrase "inherently dangerous" during its discussion indicates that the PERA board exceeded the scope of its statutory authority and issued a decision that is arbitrary and capricious. We find no merit in this argument, noting that (1) Olson's attorney repeatedly used "inherently dangerous" rather than "inherent dangers"; (2) the supervisor of the PERA claims department began the discussion by correctly reading the relevant statutory provisions to the board and made correct references to the statutory language during the discussion; and (3) the board adopted the ALJ's findings, recommendation, and decision which referenced and properly applied the "inherent danger" language of the statute. We conclude that the PERA board's decision does not exceed the PERA board's statutory authority and is not arbitrary or capricious.

### 3.    Substantial evidence

Finally, we find no merit in Olson's assertion that the PERA board's decision is not supported by "substantial evidence." "Substantial evidence" has been defined as "1) such relevant evidence as a reasonable mind might accept as adequate to support a

---

[5] Prior to 2007, the definition of "duty disability" included disabilities that arose out of "any act of duty," providing a much broader eligibility for duty disability benefits than is available under the current statute. *See* 1999 Minn. Laws, ch. 222, art. 2, § 12 at 1445-46, 1533.

conclusion; 2) more than a scintilla of evidence; 3) more than some evidence; 4) more than any evidence; and 5) evidence considered in its entirety." *Citizens Advocating Responsible Dev. v. Kandiyohi Cnty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006) (quotations omitted). Olson focuses on (1) the board's many references to "inherently dangerous" rather than "inherent dangers"; (2) his argument that descending this spiral staircase was an inherent danger; (3) his claim that the board gave disproportionate discussion to the reason for his need to relieve the fourth-floor control-room deputy; and (4) the fact that only one board member discussed whether the inherent danger of descending the staircase was "specific" to his position. We have rejected Olson's first two arguments as meritless when applied to a sufficiency-of-evidence argument. Olson's last two arguments may go to the weight of evidence but do not go to the sufficiency of the evidence to support the PERA board's decision.

The record reflects the PERA board's consideration of the application of the statutory definition of duty disability to the circumstances of Olson's injury, and the record contains sufficient evidence to support the PERA board's decision that Olson failed to establish that he is entitled to duty disability benefits.

**Affirmed.**